[L. A. No. 12438. In Bank.—December 23, 1930.]

WILLELLA GALE et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and RICHFIELD OIL COMPANY et al., Respondents.

E. Herbert Herlihy and F. George Herlihy for Petitioners.

Edward O. Allen for Respondents.

RICHARDS, J.—The petitioners, who are the widow and minor children of Kenneth W. Gale, deceased, applied to the Industrial Accident Commission for an award against Mark M. Campbell, Richfield Oil Company, Kinner Airplane & Motor Corporation, and Maryland Casualty Company, a corporation, alleging that Kenneth W. Gale, an airplane pilot, had been killed in an airplane accident at Mines Field, Los Angeles, on September 5, 1929, while engaged in flying an airplane under employment by the respondents in said application. Hearings were had thereon, at the conclusion of which the Commission made its findings and decision denying said application upon the ground that the evidence did not establish that Kenneth W. Gale was the employee of the respondents Richfield Oil Company, Mark M. Campbell, or Kinner Airplane & Motor Corporation, and that the proceeding was not, therefore, within the jurisdiction of the Commission. A petition for rehearing was presented and denied; whereupon the petitioners applied for a writ of review to the District Court of Appeal in and for the Second Appellate District, Division Two, which application was therein denied without an opinion; whereupon the petitioners applied for a hearing before this court, which was granted, and the matter has, upon the record presented before the Industrial Accident Commission, been submitted for decision.

We adopt the statement of the evidence summarized by the petitioners, from which it appears that the facts of the case are substantially as follows: Kenneth W. Gale, an airplane pilot, was killed in an airplane accident at Mines Field, Los Angeles, upon the date above stated, leaving as his dependents the petitioners herein. The respondent Mark M. Campbell was a designer and builder of airplanes, and in the summer of 1929 had constructed an airplane which he believed capable of establishing new aeronautic records, and being in the need of financial assistance to attempt flights which might produce such records he went to the

Richfield Oil Company for aid. He there interviewed Mr. Dudley Steel, an official of that company, setting forth what he claimed to be the merits of his airplane, stating that he needed money to pay pilot's wages and other expenses. He was then informed by Steel that if the airplane and pilot met with his approval the Richfield Oil Company would give Campbell the assistance required. A written agreement was entered into between the Richfield Oil Company and Campbell, wherein the latter agreed that he would use the products of the Richfield Oil Company, delivery of which he accepted, for the purpose of making an attempt to break the existing altitude record in a Campbell supersport monoplane, and for such other test flights prior to said attempt as might be deemed necessary. He further agreed that in consideration of the delivery to him of such products he would allow said company the privilege of using his name or testimony for advertising in whatever manner the said company might see fit to employ, and that he would use no other fuel or lubricant than those of the Richfield Oil Company in connection with any record-breaking flight he might attempt within the period of six months from the date of said agreement. Nothing was said therein as to the employment or payment of any pilot by or on behalf of the Richfield Oil Company. Upon executing this agreement Campbell was introduced to one Petrie, who was an assistant to Steel, and because of the fact that Steel was about to leave for the east the matter was turned over to Petrie, with the understanding that the airplane and the pilot employed to fly it must meet with the approval of the Richfield Oil Company. Objection was made to a certain pilot whom Campbell contemplated employing; whereupon the latter sought for another pilot and was introduced to Kenneth W. Gale on or about August 17, 1929, at which time and after ascertaining his qualifications Campbell told Gale that he was to be employed to fly the airplane, and when Gale inquired about his pay Campbell told him that he, Gale, would have to look to the Richfield Oil Company for his pay. The matter of possible wages was discussed and Gale was informed that he must make his arrangements with the Richfield Oil Company as to the amount of wages to be paid. Gale thereupon left Campbell for the avowed purpose of speaking to Petrie about his compensation, and later returned to Campbell and

told him that he had made a contract with the Richfield Oil Company. Thereafter the airplane was hauled to Mines Field by the Richfield Oil Company and the name "Richfield Oil Company" was painted on both sides of the airplane in large letters. Several test flights were made, some of which were viewed by Mr. Petrie, who told Campbell that the pilot and the airplane were all right, or words to that effect. Thereafter two attempts were made to break the altitude record, the results of which do not appear to have been shown. An attempt was then made by Gale to break a speed record, and a course was laid out therefor under the supervision of Petrie. It was while attempting this flight that the accident occurred which resulted in the wreck of the airplane and the death of Kenneth W. Gale, the pilot.

Upon the hearing before the Commission certain witnesses testified that Gale had told them that he was to be paid pilot's wages by the Richfield Oil Company for every hour that he spent in the airplane, and in addition to such wages he was to receive prize money or a bonus if he established new records. Other witnesses, among them the respondent Campbell, testified that they were present and heard Petrie promise to get Gale one hundred dollars expense money pending the return of the Richfield official (presumably Steel) from the east; but the record shows that Gale was killed before the date upon which Petrie was to procure and pay said sum. Upon the hearing before the Commission both Steel and Petrie appeared as witnesses for the respondent Richfield Oil Company and categorically and positively denied that Gale had ever been employed by the Richfield Oil Company, or that any contract or understanding had ever been entered into with him consummating such employment. It was admitted, however, by Steel that he had told Campbell that the Richfield Oil Company might pay a bonus to the pilot if a record were established. The foregoing is a fair summary of the evidence educed at the hearing before the Commission and upon which it based its findings and decision denying the petitioners an award. It is not seriously contended by the petitioners that they are entitled to an award either against Campbell or any other of the respondents herein than the Richfield Oil Company.

It must be conceded that the preponderance of the evidence before the Commission would seem to be in favor of upholding the petitioners' contention, and it must also be conceded that to the weight of such evidence there is to be added the statutory presumption of employment created by section 8 (b) of the Workmen's Compensation Act [Stats. 1917, p. 835], which reads as follows: "Any person rendering service for another, other than as an independent contractor, or as expressly excluded herein, is presumed to be an employee within the meaning of this act." ▇ It must also be conceded that the effect of this presumption, taken in connection with the evidence offered on behalf of the petitioners herein, would be that of casting upon the respondents in said proceeding the burden of affirmatively overcoming the said presumption. But when this much is conceded, it must further be admitted that the Commission was, under the terms of the Constitution and of the Workmen's Compensation Act, invested with the full and exclusive jurisdiction of determining whether or not, in the presence of conflicting evidence in any proceeding before it, this presumption had been overcome, and whether or not, in the presence of such conflicting evidence, it had been sufficiently established that the relation of employer and employee existed between the deceased and the respondents at the time of the occurrence of the casualty which resulted in the former's death. ▇ We are constrained to hold that the positive denial on the part of the officials of the Richfield Oil Company to the effect that no understanding or agreement for the employment of Gale had ever been entered into by or on behalf of the Richfield Oil Company created such a material conflict in the evidence relating to his said employment as would have sufficed to justify the findings and decision of the Commission to the effect that no such employment existed, and to have therefore compelled the conclusion that this court has no authority to overthrow the findings and decision of the Commission in that regard.

The order of the Commission denying the petitioners relief in this proceeding is affirmed.

Shenk, J., Seawell, J., Preston, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.