[Civ. No. 32716. Second Dist., Div. Two. Aug. 15, 1968.]

AUDREY ANN STEWART, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, DOUGLAS S. MAYER et al., Respondents.

Sisenwein & Stanton and Warren M. Stanton for Petitioner.

Everett A. Corten and Nathan Mudge for Respondents.

McCOY, J. pro tem.*—Petitioner, an applicant for workmen's compensation insurance benefits, seeks review and annulment of the order of the Workmen's Compensation Appeals Board dated January 2, 1968, denying reconsideration and affirming an order of a referee that applicant take

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

nothing on her claim against "DOUGLAS S. MAYER, doing business as DOMESTIC SANITATION ATTENDANT COUNCIL."

The applicant, born 1921, was referred by the California Department of Employment to the "Domestic Sanitation Attendant Council" (sometimes referred to as the "Council") on May 1, 1966, for training in domestic cleaning methods and equipment. She was paid $46 per week by the Department of Employment while going to the school. She finished the course on June 5, 1966. A few days before her graduation, one Mayer, sometimes referred to as "administrator" of the "Council," talked to the graduating class of about twenty people, trainees, including petitioner, regarding job placement. Upon graduation she was informed by Mayer that she would be given work at $1.50 per hour doing house cleaning in apartment buildings throughout the city as a demonstrator of the work done by the graduates. Thereafter she reported for work to Mayer's own office and from there she and a fellow worker were transported by one Al Linett to various job locations where they would do cleaning with equipment furnished by the Council. Applicant earned about $60 per week. The check she received showed no payroll deductions. On July 1, 1966, a window fell on applicant's right arm while she was cleaning an apartment. She continued working but informed Linett the next day and was taken by Linett to a doctor's office for medical treatment on July 5, 1966. No further medical treatment or other benefits were provided.

On November 23, 1966, applicant filed claim for workmen's compensation benefits against Mayer doing business as Domestic Sanitation Attendant Council, Arthur Giffis doing business as Maid Power, and Al Linett,[1] alleging that as a result of the injury she was disabled from July 5 to August 27, 1966, and again from October 31, 1966, through the date of filing. On October 13, 1967, after extended hearings, the referee found that applicant had sustained industrial injury arising out of and occurring in the course of her employment by "Los Angeles Domestic Sanitation Attendant Council," and was entitled to temporary and permanent disability indemnity, reimbursement for medical expense and medical-legal costs. The referee made his award against "Los Angeles Domestic

---

[1]We are not here concerned with the status of Arthur Giffis or Al Linett as employers. No evidence was offered with respect thereto, and no finding was made concerning them although they were included in the "take nothing" order. As indicated below, the only issue relates to the finding that the "Council" as distinguished from Mayer was the employer.

Sanitation Attendant Council'' which was uninsured, and ordered that applicant take nothing ''against Douglas S. Mayer, Arthur Giffis and Al Linett.''[2] On January 2, 1968, the appeals board adopted the report of the referee and, for the reasons stated by him, denied the applicant's petition for reconsideration.

The only issue to be determined by us relates to the identity of applicant's employer at the time of her injury. Applicant contends that the uncontradicted evidence compels a finding that Mayer was her employer. She points out that the only evidence to support the findings of the referee was the testimony of Mayer that he acted as ''administrator'' for the ''Council,'' that the ''Council,'' which was neither a corporation nor a partnership, was nonexistent.

The appeals board argues that the evidence is clear that Mayer was at all times acting as the agent of another and that no service was being rendered by the applicant to Mayer.

In our opinion the finding that applicant was employed by the ''Los Angeles Domestic Sanitation Attendant Council,'' is not only not supported by, but is contrary to the evidence which basically is not in conflict. As we read the record we are satisfied that the concept of such a ''Council'' as a legally responsible entity is no more than a figment of Mayer's imagination, and that, in the eyes of the law the ''Council'' is neither fish nor foul—nor even good red herring.

As noted above, the referee found that applicant sustained a compensable industrial injury ''arising out of and occurring in the course of her employment as a domestic, by Los Angeles Domestic Sanitation Attendant Council.'' In his opinion on this finding the referee refers to ''a contract of the federal government (Department of Labor) with an entity, Los Angeles Domestic Sanitation Attendant Council, which was organized as part of the Manpower Training Act in accord with the overall Anti-Poverty Program of the federal government.'' (This document, a copy of which is in the record, is hereafter referred to as ''the contract.'') After a brief reference to the contract and the testimony of Mayer,[3] the referee

---

[2]We shall comment later in this opinion on the referee's opinion on his findings and award.

[3]In his opinion the referee says: ''The major issue in the instant case revolves about the correct employer. . . . Basic to the issues involved is the contract which was signed on behalf of the Attendant Council by defendant Douglas S. Mayer as administrator and Irving Ginsberg as coordinator. A provision of the contract called for a workmen's compen-

concludes his opinion as follows: "The very nature of the program and its resulting activities, as explained by Mr. Mayer, leaves much to be desired as to the integrity and honesty of the people involved in the program. It is to be noted that the program as established by the contract is no longer existent. The referee is in sympathy with the applicant but by virtue of the aforesaid contract (Applicant's Exhibit 3), the defendants Mayer, Giffis, and Linett, must be held not liable under the Labor Code. However, the facts would indicate that the major entity, Los Angeles Domestic Sanitation Attendant Council, are the employers, . . ." What are the facts?

The contract on which the referee apparently based his finding is entitled "Negotiated Cost-Reimbursement On The Job Training Contract," dated March 1, 1966. This contract recites that "Los Angeles Domestic Sanitation Attendant Council" and the United States Department of Labor mutually agree that it shall be effective as of the date of execution and shall terminate November 1, 1966, and that in consideration of the Government's payment of the estimated cost of the contract, not to exceed $32,420, "the Contractor shall provide the training described herein in strict accordance with the attached documents," consisting of some five pages of general provisions printed in 6-point type and some 28 pages of other attachments. This document was signed by the contractor as follows: "Los Angeles Domestic Sanitation Attendant Council. Douglas S. Mayer, Administrator." An executed copy of the contract was forwarded to Mayer on April 29, 1966.

Taking this contract by its four corners, it is apparent that the "Contractor" agreed thereby to do no more than to pro-

---

sation insurance policy to be issued on behalf of all employees of the Attendant Council. The policy obtained by Mr. Mayer or someone under his supervision covered only the immediate office employees, namely, Mr. Mayer, Mr. Ginsberg, and two secretaries. The method of training for domestics was handled by the Los Angeles Board of Education System. Mr. Mayer and his associates on behalf of the Attendant Council allegedly contacted owners of large residential multiple units for the providing of domestic services and the employment of graduates of the aforesaid domestic training. According to the testimony of defendant Mayer, the domestic employees were to be paid by the owners of the property for whom they did cleaning. This was refuted by the applicant who stated that she was paid directly by defendant Mayer and on one occasion by an associate. This was counter-refuted by defendant Mayer who stated that he had 'loaned' some money to the applicant because she had not been paid."

vide the training described in the attached documents for 180 trainees. For our purposes it is enough to note that the contract contains no reference whatever to the legal status of the "Council." True, there is a certificate attached to the contract by one Ginsberg which recites that he is "the Coordinator of the . . . committee named as Contractor in the foregoing instrument," and that it was duly signed by Mayer as administrator of said committee "for and in behalf of said organization by authority of its governing body and is within the scope of its . . . committee powers." Nowhere in the record, however, is there any evidence as to the organization or composition of this "committee" or of any of its official actions. Page 3 of one of the attached documents entitled "Proposals for Federally Assisted On-the-Job Training" reads in part: "The Los Angeles Domestic Sanitation Attendant Program is being designed and created by the Apartment Owners Association, Conduminium [sic] Managers Council, and the Statewide Homeowners Association, also the Property Managers Association for the purposes of training and upgrading the skills and dexterities needed for employment in the domestic services industry. . . ." But again there is nothing in the record to show the part these associations played, if any, in the formation of the "Council," or whether their representatives ever met as a council or committee and authorized the execution of the contract.

Be all this as it may, the fact remains that the applicant was injured, not during the period of her training, but after she had completed that training and had graduated. At this point it is significant that the contract is silent as to the employment of a trainee by the "Council" after her graduation. The most that can be said is that the purpose of the program was to train domestics for employment in the open market. We turn then to the relation of applicant to Mayer and the "Council" at the time of the applicant's injury.

As noted at the beginning of this opinion, applicant testified that after she graduated from the training program on June 5, 1966, she and another graduate were taken to Mayer's office. Mayer there told them that he wanted them "to go and demonstrate a couple of apartments," and that "he would pay us a dollar and a half an hour." Thereafter, on succeeding days they were taken to various apartments by Linett, one of the defendants, in a station wagon in which all necessary

equipment was transported.[4] This equipment was furnished by Mayer. Linett stayed on these jobs with them and kept a record of the time they worked which he turned in to Mayer. They were paid for their work by Mayer, who made out and signed the checks, at the rate of a dollar and a half an hour. She was working under this arrangement when the accident happened on July 1, 1966. At the times here involved the "Council" had its office at 5725 South Broadway in Los Angeles. At the same time Mayer had his office at 5908 South Broadway. This is the office in which applicant had her conversations with Mayer after her graduation and from which she departed for work each morning.

As we view it, the testimony of the applicant clearly established that at the time of her injury she was rendering services for Mayer under an oral agreement with him. ██ "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." (Lab. Code, § 3357.) "This presumption, together with evidence of a contract of employment or hire, casts upon the alleged employer the burden of overcoming the presumption. (*Gale* v. *Industrial Acc. Com.,* 211 Cal. 137, 141 [294 P. 391].)" (*Van Horn* v. *Industrial Acc. Com.,* 219 Cal.App.2d 457, 464 [33 Cal.Rptr. 169].)

██ Having reviewed all the evidence, we are of the opinion that Mayer, the alleged employer, has not met the burden of overcoming the presumption established by section 3357 of the Labor Code. By the same token, we are of the opinion that the finding that applicant was not employed by Mayer but was employed by the "Council" is simply not supported by any evidence.

Apart from his denials, the only defense offered by Mayer was that, in his dealings with applicant after her graduation from the training program he was acting only as an agent for the "Council." ██ "Any person having capacity to contract may appoint an agent . . ." (Civ. Code, § 2296.) Such a contract may be oral and may be implied from the circumstances and conduct of the parties. (Civ. Code, § 2309; *Bergtholdt* v. *Porter Bros. Co.,* 114 Cal. 681 [46 P. 738].) ██ The existence of agency or employment is a question of fact where the evidence is conflicting. (*Sokolow* v. *City of Hope,*

---

[4]There is no evidence in the record that the defendant Linett had any connection with, or participated in any way with the training program under the contract with the Department of Labor.

41 Cal.2d 668, 675 [262 P.2d 841].) ▮ The extrajudicial declarations of one assuming to act as an agent cannot be used to prove the agency unless made in the presence of, or communicated to and acquiesced in by the principal. (*Scott* v. *Los Angeles etc. Co.*, 92 Cal.App. 258 [267 P. 914]; *Dooley* v. *West American Coml. Ins. Co.*, 133 Cal.App. 58 [23 P.2d 766].) However, the testimony of the agent as a witness is admissible to prove either authorization or ratification. (*Mayfield* v. *Fidelity & Cas. Co.*, 16 Cal.App.2d 611 [61 P.2d 83]; *Kast* v. *Miller & Lux,* 159 Cal. 723 [115 P. 932].) ▮ There is no evidence whatever in the record which, under these rules, can be said even remotely to support Mayer's contention that he was an agent of the ''Council'' at the time of applicant's employment as a ''demonstrator'' or at the time of her injury. In his opinion in support of his findings as to the identity of the employer the referee refers to the contract between the ''Council'' and the Department of Labor. As we have pointed out, this contract relates only to the training program, and does not even remotely purport to establish a continuing agency between Mayer and the ''Council'' after the graduation of the applicant from that program.

In his opinion the referee also says: ''Mr. Mayer and his associates on behalf of the Attendant Council allegedly contacted owners of large residential multiple units for the providing of domestic services and the employment of graduates of the aforesaid domestic training,'' and that ''According to the testimony of defendant Mayer, the domestic employees were to be paid by the owners of the property for whom they did cleaning.'' Assuming that this testimony of Mayer is true, it does not serve to exculpate Mayer from his status as the employer of the applicant. As Mayer himself testified, two girls out of the first graduating class, including the applicant, ''were used as demonstrators and twenty-two girls placed in other work assignments.'' Furthermore, although he testified that he never received any money from any apartment house or condominium owners or employers, he failed to produce any evidence to corroborate his statement that those owners were to pay for the services of applicant as a ''demonstrator,'' or that, in fact, they did so pay her. Mayer's denial of applicant's testimony as to how she was paid, without more, does not create any real conflict in the evidence.

In *Schaller* v. *Industrial Acc. Com.*, 11 Cal.2d 46, the court said (pp. 50-51 [77 P.2d 836]) as quoted in *Van Horn* v. *Industrial Acc. Com., supra,* 219 Cal.App.2d 457 at p. 463:

"The question of whether a worker is an employee within the meaning of the Compensation Act . . . is referred to as a question of mixed law and fact to be proved like any other question. [Citations.] It is a question of fact upon which the judgment of the commission is conclusive where the facts are in dispute. It becomes a question of law only when but one inference can reasonably be drawn from the facts. Where two opposing inferences may be drawn from the evidence, and the inference accepted by the commission is reasonable, and is supported by evidence in the record, that inference must be sustained."

From our review of the record the facts in the case before us relating to applicant's employment by Mayer as a demonstrator after her graduation from the training program are not in dispute. The minor conflict as to whether Mayer actually paid her wages is of no significance in view of Mayer's admission that it was agreed that she was to be paid $1.50 an hour. In our opinion but one inference can reasonably be drawn from the facts. That inference is that at the time of applicant's injury she was employed by Mayer. The contrary inference drawn by the board, that she was employed by the "Los Angeles Domestic Sanitation Attendant Council," is not reasonable and is not supported by any evidence in the record.

One other matter, relating to the parties before the board, requires brief comment. The application for compensation benefits in this case names the employers as "Douglas S. Mayer, dba Domestic Sanitation Attendant Council. Arthur Giffis dba Maid Power. Al Linett." On May 23, it was "ORDERED that the application be amended to show the defendant employer as Douglas S. Mayer, Arthur Giffis and Al Linett." On August 2, 1967, the application was further amended to show an "additional party defendant, standing by itself, Los Angeles Domestic Sanitation Attendant Council." There is no evidence in the record to indicate that whatever its legal status, the "Council" standing alone was ever served with process or advised that it had been named as an additional party defendant, or that it had been given an opportunity to be heard. It cannot be assumed that, in appearing for "the defendants" after the "Council" was named a party to the proceeding, Mr. Anderson, who had theretofore appeared for the defendant Mayer, was also appearing for the "Council" as an additional defendant. ▮ Patently, no award against

a party as an employer who has not been given proper notice of the proceedings against it and an opportunity to be heard, can be sustained.

The order of the board denying reconsideration is annulled and the matter is remanded to the board for further proceedings consistent with the views expressed in this opinion.

Herndon, Acting P. J., concurred.