[Civ. No. 28593. First Dist., Div. Four. Sept. 20, 1971.]

HANNAH M. JONES, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD, OIL, CHEMI-
CAL AND ATOMIC WORKERS INTERNATIONAL UNION et al.,
Respondents.

## COUNSEL

Condon, Dolgin, Kully & Jameson and David A. Colgin for Petitioner.

Rupert Pedrin, Richard E. Ryan, Hanna & Brophy and Donald R. Brophy for Respondents.

Arnold, Smith & Schwartz, Jerome Smith, Bernard Kleiman and Kleiman, Cornfield & Feldman as Amici Curiae on behalf of Respondents.

## OPINION

**DEVINE, P. J.**—Petitioner seeks annulment of a take-nothing award. She is the widow of Richard E. Jones, who received fatal injuries while he was acting as picket captain during a strike of respondent Oil, Chemical and Atomic Workers International Union Local 1-5 against Phillips Petroleum Company. Respondents contend that he was not an employee of the union.

The facts are stated in the opinion and order denying reconsideration of respondent Workmen's Compensation Appeals Board (hereinafter the Board), thus: "Deceased was a member of defendant local, a labor, benevolent and fraternal organization, which was affiliated with defendant international. The local has four regular full time employees, a financial secretary, a field representative and two clerical employees. It is governed by an executive board elected from its membership.

"Whenever a strike is called, the executive board, or the secretary-treasurer, appoints a strike committee which in turn selects picket majors, picket captains and pickets. A strike welfare committee is also formed. The majors man the telephones in the union office. The captains supervise the picket lines to see that those assigned to duty are present and that they are properly relieved. Pickets are generally scheduled by the strike committee for one four-hour shift every three days.

"After a strike has continued for 21 days, striking pickets are eligible for interest free loans of up to $40.00 a week. Strikers with emergencies and other special needs can obtain additional funds or help from the welfare committee. Pickets are furnished coffee and food while on duty and provided with rain gear in inclement weather. None of the strikers, however, are placed on the union payroll.

"Every member of the union is assigned to picket duty and failure to appear for this duty without a legitimate excuse results not only in a fine but in loss of eligibility for loans. The union did not hire nonmembers to perform picket duty.

"Deceased, an employee of Phillips Petroleum Company, was a member and past president of the local union. He was shop steward for the labor gang at Phillips and a member of the local's executive board.

"On January 4, 1969, defendant unions called a strike against Phillips and three other oil companies. Deceased was selected to be either a picket major or a picket captain. The following day while performing in the capacity of picket captain at one of the struck premises he was run over by an oil truck and sustained the injury for which petitioner seeks benefits."

To this statement we add the detail that the assistance, besides interest free loans, available to a picket (and denied to a member of the union who fails to perform assigned duties) would be in the form of vouchers, on the basis of need, for food up to $50 a week and for medicines.

■ The question whether a person is an employee may be one of fact only, or of mixed law and fact, or of law only where, as here, there is no dispute as to the facts. ■ The ruling by the Board plainly is subject to our independent review. (*Crown City Lodge, etc.* v. *Industrial Acc. Com.,* 10 Cal.App.2d 83, 86 [51 P.2d 143]; *Van Horn* v. *Industrial Acc. Com.,* 219 Cal.App.2d 457 [33 Cal.Rptr. 169].)

To begin with, we take note of Labor Code section 3351, which reads, in relevant part: " 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, . . ." Labor Code section 3357 states a presumption as follows: "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." Following are sections which expressly exclude certain occupations from the status of employee (e.g., volunteer ski patrolmen, newspaper and periodical vendors when title to the periodical has passed to the vendor), and other sections which expressly include certain occupations, the status of which might otherwise be doubtful (e.g., jurors, fire department volunteers, disaster service workers). No reference is made to pickets.

■ Now, the presumption applies to those who perform work "for another." We find this condition to be met by an active picket. To be

sure, he is working for himself in the sense that if the strike is won, he will participate in its benefits. To be sure, he is a member of the union, with a certain amount of the "all for one and one for all" character imputed to him. But a labor union is considered an entity apart from its members where the interests of justice indicate that this should be so, as in a personal injury action allegedly caused by the negligence of the union in maintenance of its property. (*Marshall* v. *International Longshoremen's & Warehousemen's Union,* 57 Cal.2d 781 [22 Cal.Rptr. 211, 371 P.2d 987].) We find no difficulty in regarding the picket during his course of duty as performing service "for another." The individual may have voted against the strike; he may not agree with the tactical orders for the picketing, or with picketing at all, but he must, unless excused, engage in the action or suffer loss of benefits (which he may need acutely during the suspension of pay) and a fine besides. Moreover, the active picket gains no more from the outcome of the strike itself than does the union member who is excused, for whatever reason, from picketing.

Nor do we find incongruous, or even unique, the status of the picket who may be on one day an employee of the company which is struck (here, Phillips Petroleum), and on the next an employee of the union, with the positions likely to be reversed at the end of the strike. In the case of a partnership, a working member of a partnership receiving wages irrespective of profits from the partnership is an employee for purposes of workmen's compensation. (Lab. Code, § 3359.) He may proceed against his own partnership if he is injured at work. His status may change from time to time.

So much for performing services "for another," bringing into play the statutory presumption. ■ The presumption will be overcome if the essential contract of hire be not present, the burden of proof being on the one for whom the service was rendered. (Lab. Code, § 5705, subd. (a); *Gale* v. *Industrial Acc. Com.,* 211 Cal. 137, 141 [294 P. 391].)

■ We hold that there was a contract of hire. Surely there would have been if outsiders had been employed at a stated wage, as often happens, to do the picketing. What is the difference between their status and that of the picket who is a striker? There are differences, of course. The "stranger" has no direct interest in the outcome of the strike; he may simply hope the conflict, and with it his ambulatory employment, will not soon end. But, as we have pointed out above, a union member is not necessarily willing to picket, or even to strike. The status of the picket is not to be decided on the sentiments and the preferences of the individual.

There is a difference in the form of recompense, too. The picket does

not receive wages as such. But the union, in making use of its own membership for the quasi-military duties of picketing, did not neglect to make provision for economic substitutes for wages in the form of food and medical vouchers and of interest-free loans. ■ Although it has been held that a volunteer who renders wholly gratuitous services is not an employee unless special statutory provision is made for his undertaking (*Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802 [167 P.2d 729]; *Mc-Burney* v. *Industrial Acc. Com.,* 220 Cal. 124 [30 P.2d 414]; *Hartford A. & I. Co.* v. *Industrial Acc. Com.,* 139 Cal.App. 632, 637 [34 P.2d 826]), it has also been held that compensation need not be in the strict form of wages (*Anaheim General Hospital* v. *Workmen's Comp. App. Bd.,* 3 Cal.App.3d 468, 473 [83 Cal.Rptr. 495]; *Pruitt* v. *Workmen's Comp. App. Bd.,* 261 Cal.App.2d 546, 553 [68 Cal.Rptr. 12]; *Van Horn* v. *Industrial Acc. Com.,* 219 Cal.App.2d 457 [33 Cal.Rptr. 169]; *Union Lumber Co.* v. *Industrial Acc. Com.,* 12 Cal.App.2d 588, 596 [55 P.2d 911]). ■ Therefore, it is not necessary that the worker be on the payroll. Respondents' emphasis on the fact that Jones was not on the payroll is not impressive, because of the authorities last cited. In none of them was the employee on a payroll. Nor is it required that receiving of compensation be the sole or even the chief motivation for the worker. In *Van Horn, supra,* a student was killed in an airplane crash on his way to an intercollegiate game with the football team of which he was a member. It was held that because the young man, a star athlete, received from his college as an "athletic scholarship" $50 a quarter, and $75 for rent during the football season, he was an employee. Although the subject of dual motivation is not discussed in the opinion, we have no doubt that there would have been no difference in the result if the respondent had argued, with evidentiary backing, that the young man was incited to participation in his sport by the desire to win with his team as much as by his need to make some provision for himself and his wife.

But where there is some form of economic compensation, the most important element in deciding whether one is an employee is that of the right of control. (Riesenfeld, *Contemporary Trends in Compensation for Industrial Accidents Here and Abroad,* 42 Cal.L.Rev. 531, 536-538; *Riskin* v. *Ind. Acc. Com.,* 23 Cal.2d 248, 253 [144 P.2d 16]; *Cal. Comp. Ins. Co.* v. *Ind. Acc. Com.,* 118 Cal.App.2d 653, 655 [258 P.2d 78].) In the latter case, the injured man, a carpenter, worked on the church building where the accident happened, being paid for his work except that on certain days, including Saturdays, he donated his work because he was a member of the church. He was injured on a Saturday. But he was subject to orders, and had been ordered by the foreman to do the task at the place where he was injured, wherefore, he was an employee.

That authority over those designated at any time as pickets would be necessary for the union's purposes is evident, concert of action being crucial; that it actually was exercised appears from the factual statement in the Board's opinion.

There is but one workmen's compensation case anywhere, so far as we know, relating to a picket, a California case, cited in the Board's opinion, in which it was held that a picket who was shot during his duties was not an employee: *Olsen* v. *Riggers & Stevedores Union,* 4 I.A.C. 252. But this early case (1917) is readily distinguishable from the one before us: 1) The presumption presently declared in Labor Code section 3357 first came into existence by the Workmen's Compensation Insurance and Safety Act of 1917 (Stats. 1917, ch. 586, § 8(a), p. 835), which became effective January 1, 1918, five months after the *Olsen* decision. 2) The concept of the labor union as an entity apart from its members was not fully realized until *Marshall* v. *International Longshoremen's & Warehousemen's Union, supra,* 57 Cal.2d 781, in 1962. 3) Most important of the distinctions: in *Olsen,* all of the members of the union were entitled to strike benefits, whether they picketed or not; members were free to volunteer or not as they chose. They suffered no penalty if they did not serve.

We are not troubled by the apprehension expressed by respondents, that our decision will have an impact in numberless situations where no employment was contemplated. Examples given by respondents and our brief comments are: 1) A boy scout gathering wood for a campfire might be held to be an employee of the troop. But the element of compensation is missing there; besides, youthful wood gathering and strike-caused picketing, even if peaceful, are rather different. In Iowa, it was held that an eagle scout who was gentling horses for younger scouts was not an employee (*Stiles* v. *Des Moines Council, Boy Scouts of America,* 209 Iowa 1235 [229 N.W. 841]); but in the case of a member of a golf club, who was required to contribute five dollars or five hours of work improving the golf course, the court distinguished the boy scout case, and held that the member at work (somewhat less serious work than picketing) was an employee (*Usgaard* v. *Silver Crest Golf Club,* 256 Iowa 453 [127 N.W.2d 636]). 2) Another example offered is that of a member of a social club who cooks for an annual banquet and receives a bit of refreshment, or the member of a church who sweeps out the church before services and receives a roll and coffee from the pastor. But these persons make no claim of right to the insignificant rewards; besides, they can quit at will without economic penalty.

We need not concern ourselves with apprehension about possible un-

warranted extensions of our ruling. The Board, the courts, and, if need be, the Legislature (which has been active in specifying inclusions to and exclusions from the status of employee) will take care of future developments. We must decide merely whether the widow and the dependent child of decedent are entitled to benefits on the basis that he was an employee of the union. We decide that he was, because of the presumption of the law (Lab. Code, § 3357), because the facts do not prevent, but support, application of that presumption, and because all of the provisions of the Workmen's Compensation Act are to be construed liberally. (*Colonial Ins. Co.* v. *Ind. Acc. Com.,* 27 Cal.2d 437, 442 [164 P.2d 490]; *Granado* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 399, 404 [71 Cal.Rptr. 678, 445 P.2d 294].)

The take-nothing award is annulled.

Rattigan, J., and Christian, J., concurred.

Respondents' (except the Board) petition for a hearing by the Supreme Court was denied November 18, 1971.