[No. F008538. Fifth Dist. Oct. 19, 1987.]

SANDRA BARRAGAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Respondents.

638

COUNSEL

John N. Kopsinis for Petitioner.

Tom J. Leath for Respondents.

OPINION

BEST, J.—Petitioner, Sandra Barragan, injured her back while engaged in performing services pursuant to a student externship program at Saint Agnes Hospital. Finding that she was not an employee of the hospital at the time of her injury, the workers' compensation judge (WCJ) denied Barragan's application for workers' compensation benefits. Barragan's petition for reconsideration was denied by the Workers' Compensation Appeals Board (WCAB). We annul the order because the undisputed facts establish Barragan's employee status as a matter of law.

FACTS

In August 1985, Barragan began a course of study at Galen College to become a medical assistant. She completed her classroom studies in March

1986, but in order to obtain her diploma she was required to complete a 160-hour externship program. By arrangements made through Galen College, Barragan began her externship program in the Rehabilitation Services Department at Saint Agnes Hospital. She worked at the hospital eight hours a day under the direct supervision of Linda Wenger, a registered physiotherapist-physical therapist, applying hot packs, helping the patients with isometric and group exercises, talking to the patients, taking their blood pressure, temperature and heart rates, and generally making sure they did not wander out of the building. Barragan also worked with nurses and therapists other than Linda Wenger when she was asked to do so.

On March 31, 1986, three weeks after Barragan began working, she was injured at the hospital. She had been demonstrating exercises with one of the patients when she began experiencing back pains. She then was directed to put hot packs on one patient, take hot packs off another patient, and take the blood pressure of a patient on a respirator. As Barragan sat down to take the blood pressure, her back popped, and she lost the feeling in her legs.

Randy Miller supervises the Rehabilitation Services Department at Saint Agnes Hospital. She interviewed Barragan before placing her in the externship program for training as a physiotherapist. The purpose of the hospital's externship program is to give the extern hands-on training. Mrs. Miller had worked with three students before, all of whom were hired by the hospital after completing their training. Mrs. Miller did not offer Barragan a job and, in fact, had no authority to do so without administrative approval. Barragan was provided with a nonemployee identification badge by the hospital; the badges are provided for security purposes.

Linda Wenger was employed by Saint Agnes Hospital as a physical therapist at the time of Barragan's externship and was responsible for her training. Barragan was limited by law as to what duties she could perform and everything she did was under Ms. Wenger's supervision and pursuant to her directions. For the three weeks Barragan was in the program, she performed her duties well and professionally. Ms. Wenger made no job offer to Barragan and had no authority to do so.

### DISCUSSION

In his "OPINION ON DECISION," the WCJ found "No consideration was paid or furnished to applicant by Saint Agnes Hospital" and that when injured, Barragan's "status with respect to . . . Saint Agnes Hospital was . . . a student in a learning institution . . . ." The WCJ then concluded Barragan was not an employee of Saint Agnes Hospital when she was

injured on March 31, 1986. In denying Barragan's petition for reconsideration, the WCAB adopted the findings and recommendation of the WCJ. ■ Barragan contends the WCJ's findings as adopted by the WCAB are not supported by substantial evidence. We agree.

■ When a person is injured while on the job, he is entitled to compensation under the Workers' Compensation Act, not because of any act or omission of his employer, but because an employment relationship exists. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 276-277 [179 Cal.Rptr. 30, 637 P.2d 266].) ■ The question of whether a person is an employee may be one of fact, of mixed law and fact, or of law only. Where the facts are undisputed, the question is one of law, and the Court of Appeal may independently review those facts to determine the correct answer. (*Johnson* v. *Workmen's Comp. Appeals Bd.* (1974) 41 Cal.App.3d 318, 320 [115 Cal.Rptr. 871]; *Jones* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 124, 127 [97 Cal.Rptr. 554].) The crucial facts in this case are undisputed and establish Barragan was an employee at Saint Agnes Hospital at the time of her injury as a matter of law.

In *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771 [100 Cal.Rptr. 377, 494 P.2d 1], our Supreme Court noted: "[W]e are not confined, in determining whether Laeng may be considered an 'employee' for purposes of workmen's compensation law, to finding whether or not the city and Laeng had entered into a traditional contract of hire. On the contrary, Labor Code section 3351 provides broadly that for the purpose of the Workmen's Compensation Act ' "Employee" means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . .' Section 3357 of the Labor Code declares that '*Any person rendering service for another,* other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee.'" (*Id.* at pp. 776-777, fns. omitted, italics in original.)

■ Once the presumption of employment comes into play, the burden shifts to the employer to establish that the injured person was an independent contractor or otherwise excluded from protection under the Workers' Compensation Act. (*Johnson* v. *Workmen's Comp. Appeals Bd., supra,* 41 Cal.App.3d at p. 321.)

Labor Code[1] section 3352 provides a list of specific people who are excluded from the definition of employee for purposes of the Workers' Compensation Act. The only exclusion potentially applicable to this case and

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

presented to the WCJ is section 3352, subdivision (i). This statute excludes "Any person performing voluntary service for a public agency or a private, nonprofit organization who receives no remuneration for such services other than meals, transportation, lodging, or reimbursement for incidental expenses."

In addition to relying on a specific exclusion to rebut the presumption of employee status, an alleged employer may seek to prove that the essential contract of hire required under the definition of employee in section 3351 is absent. As this court stated in *Parsons v. Workers' Comp. Appeals Bd.*: "The law clearly provides that the Labor Code section 3357's presumption of employee status is overcome if the essential contract of hire, express or implied, is not present under Labor Code section 3351. (*Jones v. Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 124, 128 [97 Cal.Rptr. 554]; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 7.02[1][a].) The traditional features of an employment contract are (1) consent of the parties, (2) consideration for the services rendered, and (3) control by the employer over the employee." (*Parsons v. Workers' Comp. Appeals Bd.* (1981) 126 Cal.App.3d 629, 638 [179 Cal.Rptr. 88].)

The Supreme Court, however, has held that these common law contract requirements should not be rigidly applied. (*Laeng v. Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 771, 777.) This court recognized the rule in *Parsons*; nevertheless, we held that a consensual relationship between the worker and his alleged employer is an "indispensable prerequisite to the existence of an employment contract under Labor Code section 3351." (*Parsons v. Workers' Comp. Appeals Bd., supra,* 126 Cal.App.3d at p. 638.) Other cases have held that control by the employer is the most important factor in establishing an employment relation for purposes of the Workers' Compensation Act. (*Edwards v. City of Chico* (1972) 28 Cal.App.3d 148, 153 [104 Cal.Rptr. 481].)

The board's decision was based on a finding that there was a lack of mutual intent to contract between Barragan and the hospital and that there was a failure of consideration for the services rendered by Barragan. Contrary to the board's findings, the evidence shows that a consensual employment relationship existed between Barragan and Saint Agnes Hospital. There was ample consideration to support a contract for an employment relation.

To support his finding of a lack of mutual intent to contract for employment, the WCJ relied on evidence given by Randy Miller and Linda Wenger that Barragan was never offered a job at the hospital. The WCJ also stated that Barragan knew she was not an employee when she entered into the

extern program, since she did not replace a worker at the hospital or fill an established position. He also noted that Barragan did not work as a physical therapist, but only followed the directions of Linda Wenger. Finally, the WCJ noted that Barragan's position at the hospital was created solely for her instruction in a program on which she decided.

Citing to section 3351, Hanna writes in his treatise that to be covered under workers' compensation law, personal services must be performed under appointment, contract of hire or apprenticeship. The appointment, contract of hire or apprenticeship may be express or implied, written or oral. Hanna also states the requirement in section 3351 "is a formalization of the fact that the employment relationship is a mutual arrangement between employer and employee under which both give up and gain certain things." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1987) § 3.02[1][a], pp. 3-6.)

Hanna also states that where the alleged employer denies any employment relationship, one must determine whether the employment contract existed. This contract, like all contract relationships, is based on the mutual agreement of contracting parties. The parties' intentions and mutual assent is gleaned from their outward words and acts as judged by reasonable standards. A party's unexpressed intention is usually immaterial, because whether an employment relationship was created is determined by external, rather than internal, standards and objective, rather than subjective, tests. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *op. cit. supra,* § 3.02[1][b], pp. 3-7.) Despite these traditional notions of contract, the California Supreme Court in *Laeng* v. *Workmen's Comp. Appeals Bd.* held that an employment relationship for purposes of the Workers' Compensation Act does not exist solely from technical contractual or common law conceptions of employment. (*Laeng* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 777.) In fact, Hanna notes, "Overriding these conventional principles for the construction and interpretation of contracts is the statutory injunction that the compensation laws be liberally construed in favor of persons injured in the course of their employment." (2 Hanna, *op. cit. supra,* § 3.02[1][b], pp. 3-7.)

Even under the strict views of what may constitute an employment contract set out by Hanna, the evidence in this case compels the conclusion that there was mutual intent to create an employment relationship. The evidence shows that to obtain a diploma from Galen College Barragan was expected to acquire 160 hours of on-the-job training. Barragan informed Galen College that she wished to work in physical therapy involving senior citizens and adults. The college then contacted Saint Agnes Hospital, and the hospital agreed to allow Barragan to work at the hospital under the direction of

Randy Miller and Linda Wenger. After Barragan accepted this appointment, she began performing services for the hospital's physical therapy department. The objective actions of Barragan and Saint Agnes Hospital clearly indicate that these parties intended an arrangement in which Barragan performed services for the hospital and the hospital provided training and instruction to Barragan to enable her to earn her diploma.

Barragan's lack of status as a full-fledged physical therapist does not mean that she did not intend to perform services for the hospital or that the hospital really was not accepting her services in the capacity of an employer. Barragan was not a physical therapist. She and the hospital could not have agreed that she would work as a physical therapist. The question is whether she and the hospital could agree that she would work as an assistant to the physical therapist at the hospital. The WCJ's finding that Barragan did not actually do work as a physical therapist, therefore, is irrelevant to any issue in this case.

Next, the WCJ asserts there was no mutual intent to enter into an employment relationship because Randy Miller and Linda Wenger testified they did not offer Barragan a job. As we understand the testimony, these people were not denying that Barragan worked at the hospital temporarily, but only that they could not, and did not, offer petitioner a permanent position in the physical therapy department of the hospital. Furthermore, even if the hospital did not intend to enter into an employment relationship with Barragan even for the one month she needed for training, this intent was never specifically conveyed to Barragan. That is, no one specifically told Barragan she was not technically being employed even for that one month. This fact was also not conveyed to Barragan by Galen College. The outward actions indicated to Barragan that she was temporarily employed at the hospital. ■ As Hanna notes, mutual assent to contract is not ascertained by considering the internal actions or subjective motives of a party. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *op. cit. supra,* § 3.02[1][b], pp. 3-7.)

The evidence does show that the hospital had a policy that nonemployees were to wear badges just like employees, only with a number affixed to the badge with the prefix of the letters "NE," presumably standing for nonemployee. Also included in the evidence is Barragan's identification badge that shows her number as NE4778. However, there is no evidence that the significance of NE was ever explained to Barragan or that the hospital policies and procedures on employee versus nonemployee status were ever given to her for review. The hospital's subjective, unilateral, nondisclosed view of Barragan as a nonemployee does not compel a conclusion that an employment relationship did not exist. As testified by Barragan in her

deposition, she was interviewed by Randy Miller upon arriving at the hospital and was shown to her work area. At this meeting, Miller asked her to write out her goals she hoped to attain by working for the hospital. Nothing was said concerning Barragan's technical status as an employee or a nonemployee of the hospital at this first meeting.

The same is true for the Galen College memorandum informing various offices that Galen externs are to be considered students. This memo is not addressed to any particular person and is not even dated. There is no evidence that it was viewed by either Barragan or Saint Agnes Hospital.

■ Given the policy discussed by the *Laeng* court that strict rules of contract law are not dispositive of the question of an employment relationship, and the fact that section 3351, the definition of employee, should be liberally construed, the evidence shows only that Barragan and the hospital mutually intended to create an employment relationship.

The WCJ also found that there was no consideration for the contract of employment. ■ It has long been a requirement of an employment contract that it be supported by consideration. (*Parsons v. Workers' Comp. Appeals Bd., supra,* 126 Cal.App.3d at p. 638.) The counterpart to this principle is the rule of law that a person providing purely gratuitous voluntary service is not an employee and has not entered into an employment relationship with the person receiving the services for purposes of the Workers' Compensation Act. (See *Edwards v. Hollywood Canteen* (1946) 27 Cal.2d 802, 805 [167 P.2d 729]; *Jones v. Workmen's Comp. Appeals Bd., supra,* 20 Cal.App.3d at p. 129.)

It has also long been a rule that for purposes of workers' compensation, the consideration or compensation for an employment contract need not be in the strict form of wages or money. (*Laeng v. Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 777, fn. 5; *Parsons v. Workers' Comp. Appeals Bd., supra,* 126 Cal.App.3d at p. 635; *Anaheim General Hospital v. Workmen's Comp. App. Bd.* (1970) 3 Cal.App.3d 468, 473 [83 Cal.Rptr. 495]; *Van Horn v. Industrial Acc. Com.* (1963) 219 Cal.App.2d 457, 464 [33 Cal.Rptr. 169]; *Union Lumber Co. v. Indus. Acc. Com.* (1936) 12 Cal.App.2d 588, 596 [55 P.2d 911]; *Gabel v. Industrial Acc. Com.* (1927) 83 Cal.App. 122, 125 [256 P. 564].)

Nonmonetary consideration for an employment agreement may take many forms. For example, in *Gabel v. Industrial Acc. Com.,* two neighbors had an oral agreement that they would exchange farm operation services of equal value whenever necessary. On one occasion, Bach was directed by Gabel to help save some buildings on Gabel's land that were in danger of

being destroyed by a brush fire. In performing this task, Bach was burned. Bach was awarded workers' compensation benefits. Gabel appealed the award on the ground that Bach was not an employee but was merely a volunteer. The Court of Appeal disagreed, holding that pecuniary consideration for services is not necessary. "One may compensate for services by means of any property of value, or even by a return of services pursuant to agreement." (*Gabel* v. *Industrial Acc. Com., supra,* 83 Cal.App. at p. 125.) The consideration given by Gabel, of course, was the service he would provide to Bach in the event that Bach required it. Services clearly may be characterized as nonmonetary.

Another example of nonmonetary consideration may be found in *Laeng* v. *Workmen's Comp. Appeals Bd.* In this case, Laeng was attempting to obtain a job as a city refuse collector. In order to get the job, the city required Laeng to pass an agility test. During the performance of the test, Laeng was injured. In this try-out situation, the city obviously was not providing cash payment or any other type of compensation to Laeng. The Supreme Court, nevertheless, held Laeng was entitled to workers' compensation benefits. The Supreme Court held in a footnote, "Contrary to the respondents' suggestion, California workmen's compensation law does not require that an applicant be receiving actual 'compensation' for his 'services' in order to fall within the workmen's compensation scheme." (*Laeng* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 777, fn. 5.)

Next, in *Union Lumber Co.* v. *Indus. Acc. Com.,* a student was enrolled in a vocational training program at his school. As part of his vocational training, the local butcher shop agreed to hire him. The shop agreed to, and did, pay the school $25 for each semester that the student worked. The school board had discretion to keep this money, but it gave the money to the student each semester. The student was injured while working at the butcher shop, and he recovered workers' compensation benefits. The question on appeal was whether the student was an employee of the shop or only a volunteer. The Court of Appeal held that a student may render services in a dual capacity of pupil and servant, and "The consideration for the agreement of employment may be represented by money paid for services or it may consist of valuable instructions rendered to qualify the pupil as a skilled artisan or tradesman." (*Union Lumber Co.* v. *Indus. Acc. Com., supra,* 12 Cal.App.2d at p. 594.) The court also held there was adequate consideration for the employment agreement since the shop was required to pay $25 each month to the school. The court further noted that even if it were assumed the student was not actually paid any money for his services by the shop, there was still ample consideration for the agreement in the form of the instructions the student received from the butcher shop in training him to become a skilled butcher. (*Id.* at pp. 595-596.)

A final example of nonmonetary consideration to support an employment arrangement may be found in *Morales* v. *Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 283 [230 Cal.Rptr. 575]. Morales was sentenced to 60 days confinement in county jail. During his confinement, he was offered the chance to participate in a work release program. He agreed to the program which required him to work for the county doing community work. The sole consideration Morales received for his participation in the program was release from physical confinement. Workers' compensation benefits were denied by the WCAB on the ground that an employment relationship did not exist due to a lack of consideration. The Court of Appeal, however, held that Morales was an employee and was entitled to workers' compensation benefits. It reasoned that consideration other than wages may support a contract of hire within the meaning of section 3351; hence, the release from confinement Morales received in exchange for his services was sufficient consideration. (*Morales* v. *Workers' Comp. Appeals Bd., supra,* at p. 289.)

These cases not only support but compel a conclusion in the present case that the employment agreement between Barragan and the hospital is supported by consideration. While Barragan would receive no monetary compensation from the hospital for her services, she was receiving instruction from the hospital staff designed to train her as a physical therapist. This situation is indistinguishable from a situation in which the consideration takes the form of instruction designed to train a student as a butcher or services provided by one farmer to another.

The question remaining in this case is whether section 3352, subdivision (i), should be interpreted to exclude petitioner from coverage under the Workers' Compensation Act. Section 3352 lists specific classes of persons who are excluded from being employees for purposes of the Workers' Compensation Act. On June 16, 1978, subdivision (i) was added to section 3352. Subdivision (i) originally excluded: "Any person performing voluntary service for a private, nonprofit organization and who receives no compensation for such services other than meals or transportation or an allowance or reimbursement for meals and transportation; provided, however, that the organization is exempt from federal income tax under subsection (c) of Section 501 of the Internal Revenue Code, is participating at the time of the volunteer's injury in a program funded and sponsored pursuant to Title II of the Domestic Volunteer Service Act of 1973 (Public Law 93-113; 42 U.S.C. 4951, et seq.—National Older American Volunteer Programs), and has outstanding adequate liability, medical treatment, and disability insurance for its volunteers as required by federal law or regulations." (Stats. 1978, ch. 239, § 1, p. 505.) In 1979, subdivision (i) was amended by the Legislature to its present form: "Any person performing voluntary service for a public agency or a private, nonprofit organization who receives

no remuneration for such services other than meals, transportation, lodging, or reimbursement for incidental expenses." (Stats. 1979, ch. 76, § 1, p. 185.)

■ The primary goal of statutory construction is to ascertain and give effect to the legislative intent or purpose in enacting the statute. Legislative intent must be gleaned from the words and language of the statute. If the language is clear and unambiguous, this court must apply the statute as expressed. If the court determines the statute is ambiguous, other rules of statutory construction may be used to interpret the legislative intent. (*People v. McCaskey* (1985) 170 Cal.App.3d 411, 415 [216 Cal.Rptr. 54].)

■ The pertinent language in section 3352 is that any person who performs voluntary service for a nonprofit organization and receives no remuneration for the services other than meals, transportation, lodging or reimbursement for incidental expenses is not an employee. Two arguments may be made that the express language of the statute precludes its applicability to the circumstances of this case.

First, the statute only excludes a person who performs *voluntary* service for a nonprofit organization. Arguably, petitioner has not volunteered her services to the hospital in the true sense of the word "volunteer." Case law holds that one who gratuitously volunteers services to another has not created an employment relationship. An example of a volunteer would be the canteen hostess found in *Edwards* v. *Hollywood Canteen, supra,* 27 Cal.2d 802. A radio actress decided to donate her time to the war effort by acting as a dance hostess at a local canteen. She received nothing in exchange. She was hurt one evening while dancing with a boisterous soldier. The Supreme Court held she was not entitled to workers' compensation because she had volunteered her services to the club and, hence, was not an employee of that club. The hostess in *Hollywood Canteen* offered her services for no reason other than goodness and patriotism, and she expected nothing in return from the dance club. In the present case, however, Barragan did not gratuitously volunteer her services to the hospital out of the goodness of her heart. She did it in order to receive the on-the-job training necessary to get her diploma from Galen College. (See *Laeng* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 777, fn. 5.) Petitioner's services were not charitably rendered to the hospital.

Next, the statute provides that a person rendering voluntary services only to a private, nonprofit organization is excluded from coverage. The parties presented no evidence on the question whether Saint Agnes Hospital is a private, nonprofit organization. It was the hospital's burden to prove an exclusion was applicable. Having failed to present any evidence on the

status of Saint Agnes Hospital, the hospital arguably did not meet its burden of overcoming the presumption of petitioner being an employee. Therefore, any finding based on the application of this statute could not be upheld on appeal.

Moreover, even if this court were to assume (or take judicial notice under Evid. Code, § 459) that Saint Agnes Hospital is a private, nonprofit organization, the statute should not be interpreted to apply to petitioner. The question that must be answered is whether a worker who receives instruction and training designed to provide the worker with a skill does receive remuneration within the meaning of section 3352, subdivision (i), and for purposes of the Workers' Compensation Act. The statute makes clear that a person rendering service to a nonprofit organization who receives no remuneration other than meals, transportation, lodging and reimbursement for incidental expenses is not an employee. We do not believe that the Legislature intended to preclude instruction and training from the definition of remuneration when enacting the statute in 1979.

First, the definition of remuneration that is found in various dictionaries is not limited to cash payment, although that is one possible interpretation. The word remuneration is defined in Black's Law Dictionary as reward, recompense, salary, or compensation. (Black's Law Dict. (5th ed. 1979), p. 1165, col. 1.) It is similarly defined in Webster's Dictionary as reward, pay, recompense, or compensation. (Webster's Third New Internat. Dict. (1961) p. 1921, col. 3.)

Furthermore, as noted previously, there is a long line of case law establishing the rule that one need not receive actual payment of money or wages in order to be an employee for purposes of the Workers' Compensation Act. In fact, there are two cases that hold specifically that training and instruction are adequate consideration for an employment contract. This court may presume that the Legislature was aware of prior case law in drafting the statute. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) Also, if the Legislature intended to exclude people who are working for hospitals in externship programs, the Legislature could have specifically stated in section 3352 that any person receiving no remuneration other than training and instruction is excluded. Additionally, this court should not presume the Legislature intended to overthrow long-established principles of law unless that intention is made clear by express declaration or necessary implication. (*Fuentes, supra,* at p. 7.)

There was a change in the language of section 3352, subdivision (i), in 1979. The prior statute stated that any person performing voluntary

services who received no *compensation* other than meals, lodging, etc. was excluded. The present statute, of course, uses the word *remuneration* instead of *compensation*. The cases have used the words compensation and remuneration interchangeably. (See *Parsons* v. *Workers' Comp. Appeals Bd., supra,* 126 Cal.App.3d at p. 635; *Anaheim General Hospital* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.App.3d at p. 473; *Van Horn* v. *Industrial Acc. Com., supra,* 219 Cal.App.2d at p. 466.) The Legislature had knowledge of this flexible usage; hence, the use of remuneration does not mean the Legislature is speaking only of cash payment. The change in the language of the statute, therefore, was not material, and this court will not infer an intent to change the law. (See 58 Cal.Jur.3d, Statutes, § 91, p. 445.) ▪ The failure to make material alterations when reenacting a statute gives rise to a presumption of legislative adoption of judicial constructions placed on former provisions. (58 Cal.Jur.3d, Statutes, § 110, pp. 492-493.)

### DISPOSITION

For all of the above reasons, the WCAB's order denying reconsideration is annulled and the matter is remanded for further proceedings consistent with this opinion.

Hamlin, Acting P. J., and Ivey, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.