[Civ. No. 5566.   Third Appellate District.—March 21, 1936.]

UNION LUMBER COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ALTON THORNQUIST, a Minor, etc., Respondents.

Mannon & Brazier and Norman Johnson for Petitioner.

Everett A. Corten and E. J. Seawell for Respondents.

THOMPSON, J.—This is a petition for a writ of *certiorari*. The Industrial Accident Commission adopted findings and rendered an award of $1950 against this petitioner in favor of Alton Thornquist, a minor, for the loss of portions of four fingers while he was operating a meat-cutting machine in a butcher shop maintained by the Union Lumber Company. The Commission found that the accident occurred in the course of the employment of the minor. A petition for rehearing on the grounds of newly discovered evidence and for a lack of evidence to support the finding that the claimant was employed by the lumber company was subsequently presented and denied. The problem to be determined is whether a pupil of a high school who is engaged with an industry in learning a trade as a part of his vocational training under an oral agreement for stated services in consideration for which he receives compensation from the school vocational fund to which the industry regularly contributes by agreement a stipulated sum for the pupil each semester constitutes an employ-

ment rendering the industry liable for injuries sustained under the provisions of the Workmen's Compensation Act.

February 23, 1917, a federal statute, called the Smith-Hughes Act, was adopted to promote vocational education in agriculture, trades and industries, subject to cooperation of the various states. (U. S. Stats. 1917, chap. 114; 20 U. S. C. A., p. 7.) The benefits of this act were accepted and adopted by the legislature of California May 31, 1917. (Stats. 1917, p. 1387, chap. 720.) Subject to this act the Fort Bragg high school instituted a vocational training course which was approved by the state department of education. Several pupils of that school took advantage of this privilege. They were credited in their general course for efficient work in the vocational department. A cooperative working agreement was adopted by the terms of which pupils were employed by several industries as apprentices to learn trades on consideration of the payment of specified sums to be contributed by the employers each semester to the pupils or to the vocational school fund for the pupils. By agreement the pupils were actually engaged for a portion of each school day in working for the respective industries under their direct supervision and management. The vocational teacher of the school had no authority to control the pupil in his occupation or the manner of performing his duties while so employed, but adopted reports from the managers of the enterprises regarding the efficiency of the pupils. The industries which cooperated in the vocational training plan, by agreement, paid each semester the sum of $25 either to or for each pupil. This sum of money was paid either directly or indirectly to the pupils, although it appears the school authorities had a discretion to determine what sum should be paid to the students. In the present case the entire sum was paid to the claimant.

The Union Lumber Company maintained a butcher shop at Fort Bragg in connection with its enterprise. The claimant, Alton Thornquist, a minor 16 years of age, was attending the Fort Bragg high school as a pupil thereof. He had previously worked at the petitioner's butcher shop for small pay during vacation time. He learned of the cooperative vocational training plan of the school and inquired of the manager of the butcher shop as to whether he might be employed by the petitioner at that shop as a vocational pupil. The manager acquiesced and arranged with the supervising

vocational teacher of the Fort Bragg high school to accept the boy for training in the shop as a vocational pupil four hours of each school day. In consideration for his services the petitioner agreed to and did pay into the school vocational fund the sum of $25 for each semester while the pupil was so employed. The petitioner also paid into that fund a similar sum for each of the other vocational pupils in its employ. The petitioner engaged five or six other pupils in the various branches of its industry under similar terms. This resulted in the payment of $50 per year for each vocational pupil so employed. The petitioner contends that it did not pay nor agree to pay this sum of money to the pupils themselves, but on the contrary that the compensation was paid into the school vocational fund, and that the school authorities did not necessarily have to pay that money to the pupils, but that the school board's contribution to the vocational pupils was entirely discretionary on its part. The record does, however, show that the petitioner did agree to pay into that fund $25 per semester for each pupil which it employed, and that this exact sum was paid from the school vocational fund to Thornquist. It appears that this claimant was also hired by the petitioner to work in its shop in the same capacity on Saturdays and holidays, for which services he was paid by the petitioner the additional sum of twenty-five cents per hour. For several months he worked as a helper in the butcher shop under this vocational training agreement four hours each school day. His vocational training time and agreement may be segregated from the time and terms upon which he was employed in that shop on Saturdays and holidays. But we must assume from the record that he was always subject to the control and directions of the manager of the butcher shop in the duties and manner of performance of his services during the hours of his vocational training on school days, exactly as he was subject to his supervision on Saturdays and holidays. Mr. Burrows, the manager of the shop, testified in that regard: "He was instructed by me personally." We must assume that the supervising vocational teacher had no authority to direct the particular work or the manner in which the pupil should perform any service rendered in the butcher shop. While the agents of the petitioner did testify that they thought they had no authority to discharge Thornquist "directly" without first consulting the school authorities, in

support of the award we may assume the record indicates that the petitioner had the absolute right to discharge the claimant at any time without consulting the school authorities. Although the terms of the agreement under which the vocational pupil was accepted by the petitioner are somewhat uncertain, it does appear that the supervisor of vocational training neither possessed nor exercised authority over the pupil or his work while he was actually employed in the shop. Mr. Burrows testified regarding his authority over the boy:

"Q. Did you make reports to the school from time to time? A. I did not. I did not have any report to make, but I met in person Mr. Good (the vocational instructor) and he asked how he was progressing."

It appears that the boy performed efficient service while he was thus engaged in the shop, for the manager testified that he believed he would be qualified as a full-fledged butcher within two years and that he would then be able to earn $100 per month.

April 26, 1935, while Thornquist was engaged in operating a meat-cutting machine in the petitioner's shop, during the vocational hours of his employment, he caught his right hand in the machine and lost portions of four fingers. Through his guardian a claim for compensation for injuries sustained was presented to the Industrial Accident Commission. Findings were adopted favorable to the claimant to the effect that the injuries were sustained in the course of his employment with the Union Lumber Company. An award was accordingly rendered in the claimant's favor for the sum of $1950. A petition for rehearing was denied. This petition for a writ of *certiorari* was then filed.

We are of the opinion the evidence sufficiently supports the findings of the commission to the effect that Alton Thornquist was employed by the petitioner as a helper in its butcher shop, although he was also then serving as a vocational pupil of the Fort Bragg high school, and that he was injured in the course of his employment so as to render the Union Lumber Company liable for compensation therefor under the provisions of the Workmen's Compensation Act. The fact that the boy was employed as a vocational pupil is not in conflict with the relationship of master and servant which apparently existed between the petitioner and the claimant whether or not he was working in the capacity of an apprentice who as-

pired to learn the butcher business. The record supports the theory that the petitioner was the employer and the vocational student was an employee who was working for compensation and not merely voluntarily contributing his services, notwithstanding the fact that at the same time he was a vocational pupil under the tutelage and apprenticeship of the Union Lumber Company. That renders the petitioner liable for the injuries sustained by the claimant in the course of his employment.

█ The chief problem to determine is whether under the provisions of the Workmen's Compensation Act a vocational pupil who is learning a trade under an independent industry as a part of his high school course may, at the same time, be employed by it so as to render the enterprise liable for injuries sustained by the pupil in the course of his employment. In considering this question the act should receive a liberal construction with the object of extending its benefits if reasonably possible to the protection of persons who are injured in the course of their employment. (Sec. 69 (a), W. C. A.) The solution of this problem will depend on the particular facts of each case. █ The industry may be held liable only when there is a contract of employment of the pupil as distinguished from services voluntarily performed without consideration. The fact that a claimant is a vocational pupil does not necessarily preclude the existence of a relationship of master and servant or employer and employee. A student may render services in a dual capacity of pupil and servant. The consideration for the agreement of employment may be represented by money paid for services or it may consist of valuable instructions rendered to qualify the pupil as a skilled artisan or tradesman. In determining whether a contract of employment exists it is important to ascertain whether the school authorities retain the right to direct and control the pupil in the performance of his vocational duties, or whether that authority vests in the manager of the enterprise accepting his services. It will also be important to determine whether the industry has the right to hire or discharge the pupil independently of the school authorities, and whether there is a valid consideration for the alleged agreement of employment.

█ In determining these questions on *certiorari* this court has no authority to supply evidence, speculate as to facts not

disclosed by the record, weigh the evidence adduced or pass upon the credibility of witnesses. These are questions within the exclusive province of the Industrial Accident Commission. (*Ledson* v. *Pacific Indemnity Co.*, 105 Cal. App. 328 [287 Pac. 566].) But in support of the award this court should consider the entire record most favorably to the claimant, together with every reasonable inference which may be drawn from the evidence adduced. Considering the record in that manner we are of the opinion the Commission had jurisdiction to make the award and that the findings are adequately supported by the evidence.

██ It is immaterial that the compensation was paid to the boy indirectly through the school vocational fund. It does appear that $25 per semester was paid by the petitioner "for each vocational pupil". That may reasonably be construed to mean that $25 per semester was paid by the petitioner *for this boy*. He actually received that sum of money for his services. Moreover, while he was so employed in the shop he was subject to the exclusive directions and control of the manager of the business. This supplies the elements necessary to constitute an employment and renders the petitioner liable for the injuries sustained. The term "employer" is defined in section 7 of the Workmen's Compensation Act as one "who has any person in service under any appointment or contract of hire, *or apprenticeship,* express or implied, oral or written." Likewise, the term "employee" is defined in section 8 of that same act as "every person in the service of an employer . . . under any appointment or contract of hire or apprenticeship, express or implied, oral or written." Subdivision (b) of the last-mentioned section declares that "Any person rendering service for another, other than as an independent contractor, or as expressly excluded herein, is presumed to be an employee within the meaning of this act." The facts of the present case seem to fulfill the foregoing definitions of "employer" and "employee" as those terms are applied to the Workmen's Compensation Act.

██ Nor does the agreement of employment lack consideration even though we assume for the purpose of the argument presented that the claimant was not actually paid any money for his services by the petitioner, since the stipulated sum for each vocational pupil was delivered to the school authorities and was paid by them to the pupil only in the discretion of

the school board. It is not necessary that services rendered in an employment shall be compensated in money. It is said in that regard in the case of *Gabel* v. *Industrial Acc. Com.*, 83 Cal. App. 122 [256 Pac. 564]:

"A pecuniary compensation for services is not necessary. One may compensate for services by means of any property of value, or even by a return of services pursuant to agreement."

In the present case the services of the boy as a helper in the butcher shop may be deemed to have been compensated so as to furnish an adequate consideration for the contract by the instructions which he received from the petitioner in training him to become a skilled butcher. In the case of *Beatty* v. *San Diego Electric Ry. Co.*, 5 Ind. Acc. Dec. 241, it was held that an apprentice motorman on an electric car who was serving without monetary compensation was entitled to recover for injuries sustained while so employed. That case says:

"Applicant sustained an injury in the course of his employment while acting as 'student' motorman on the defendant's street railway *without pay*, it being the expectation that by two days later he would have learned the routes and would be put on the pay roll as a regular motorman. The commission held that there existed a contract of hire entitling the applicant to compensation."

Moreover, we are satisfied that the record in this case adequately shows that the compensation of $25 per semester was paid by the petitioner to the school vocational fund for the claimant. ■ It is not necessary that the compensation shall be paid directly to the employee in order to constitute a relationship of master and servant or employer and employee. (*Claremont Country Club* v. *Industrial Acc. Com.*, 174 Cal. 395 [163 Pac. 209, L. R. A. 1918F, 177]; *Department of Natural Resources of State of California* v. *Industrial Acc. Com.*, 216 Cal. 434 [14 Pac. (2d) 746]; 71 C. J. 426, sec. 169.)

The order denying the petition for a rehearing on the ground of newly discovered evidence was properly denied.

The order and the award are affirmed.

Pullen, P. J., concurred.