Filed 9/11/13  Cunningham v. Rady Children's Physician Management Services CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NANCY CUNNINGHAM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>RADY CHILDREN'S PHYSICIAN MANAGEMENT SERVICES, INC.,<br><br>    Defendant and Respondent. | D060820<br><br><br>(Super. Ct. No. 37-2010-00084014-CU-WT-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Luis R. Vargas, Judge.  Affirmed.


The Gill Group and Thomas R. Gill for Plaintiff and Appellant.

Lewis, Brisbois, Bisgaard & Smith, Marilyn R. Moriarty, Jeffry A. Miller, Lisa W. Cooney, Rita R. Kanno and Brittany H. Bartold for Defendant and Respondent.

Nancy Cunningham appeals the summary judgment entered against her in an action against her former employer, Rady Children's Physician Management Services, Inc. (Rady), arising out of her termination.  She contends reversal is required because

there are triable issues of material fact on her claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.  We agree with the trial court that Cunningham was an at-will employee who could be terminated at any time without cause and that workers' compensation provides the exclusive remedy for her alleged emotional distress.  We thus affirm the judgment.

## FACTUAL BACKGROUND

Rady hired Cunningham to act as a triage nurse on a per diem basis at a clinic, and three months later hired her as a full-time employee.  Cunningham's job duties included providing professional services to patients at the clinic and to those calling on the telephone.

When Cunningham applied for employment, she signed an application form and placed her initials alongside a paragraph titled "**At-Will Employment**," which read:

> "I understand and agree that if I am employed, my employment will be 'at-will[,]' which means that either [Rady] or I may terminate the employment relationship at any time, with or without cause or notice.  Likewise, [Rady] will respect my right to terminate my employment at any time, with or without notice and with or without cause.  I further understand that any prior representation, whether expressed or implied[,] is hereby super[s]eded and that no promise or representation contrary to the foregoing is binding on the company unless it is made in writing and is signed by me and [Rady's] designated representative."

Cunningham also signed a form acknowledging she had received an employee handbook and "had all of [her] questions answered to [her] satisfaction at this time."  Starting on the first page of the employee handbook is the following paragraph:

> "**[RADY] IS AN AT-WILL EMPLOYER.  THIS MEANS THAT REGARDLESS OF ANY PROVISION IN THIS EMPLOYEE HANDBOOK, EITHER YOU OR [RADY] MAY TERMINATE THE**

2

**EMPLOYMENT RELATIONSHIP AT ANY TIME, FOR ANY REASON, WITH OR WITHOUT CAUSE OR NOTICE. NOTHING IN THIS EMPLOYEE HANDBOOK OR IN ANY DOCUMENT OR STATEMENT, WRITTEN OR ORAL, SHALL LIMIT THE RIGHT TO TERMINATE EMPLOYMENT-AT-WILL. NO OFFICER, EMPLOYEE OR REPRESENTATIVE OF [RADY] IS AUTHORIZED TO ENTER INTO AN AGREEMENT—EXPRESS OR IMPLIED—WITH ANY EMPLOYEE FOR EMPLOYMENT OTHER THAN AT-WILL [UNLESS THOSE AGREEMENTS ARE IN A WRITTEN CONTRACT SIGNED BY THE CHIEF EXECUTIVE OFFICER OF [RADY].**"

Cunningham's initial supervisor at the clinic was Susan Johnson. Johnson completed a 90-day performance form in which she rated Cunningham's job performance as meeting or exceeding expectations, but noted Cunningham "need[ed] to work on turning calls [a]round in a more timely manner."

Rady later replaced Johnson with Chris Jensen because Johnson was not meeting her job requirements as supervisor of the clinic. For example, Johnson allowed employees to arrive at the clinic late, take extended breaks, and work overtime without prior approval, all in violation of Rady's employment policies.

After replacing Johnson, Jensen issued Cunningham a written warning concerning her conduct, policy violations, and substandard performance. The warning stated that Cunningham clocked in and out for lunch at the same time; arrived at the clinic late; worked overtime without prior approval; did not take scheduled lunch breaks; and socialized excessively. The warning, which Cunningham signed, advised her that failure to correct the problems would result in further disciplinary action, up to and including termination of employment.

Three weeks later, Jensen issued Cunningham a second written warning concerning her conduct, policy violations, and substandard performance. The second warning stated that Cunningham arrived at the clinic late and in inappropriate attire, and handled the vast majority of telephone calls by returning voice messages rather than by answering calls as they came in. Cunningham signed the warning, which again advised her that she could be terminated if she did not correct the problems identified.

After receiving the second written warning, Cunningham sent an e-mail to six physicians who worked at the clinic. In the e-mail, she complained about having received the written warnings and cautioned the physicians that Jensen, "the Spin Master Extraordinaire," would "surely try to convince [them] how unacceptable [her] performance [was.]" Because Cunningham "decided to continue her insubordination" in this manner and otherwise failed to meet her job requirements, Rady fired Cunningham shortly after she sent the e-mail and approximately seven months after she had been hired.

PROCEDURAL BACKGROUND

Cunningham filed a complaint against Rady seeking damages on theories of age discrimination, wrongful termination, breach of contract, breach of the implied covenant of good faith and fair dealing, negligent supervision, and intentional infliction of emotional distress. She later dismissed the age discrimination and wrongful termination claims with prejudice. Cunningham does not discuss her separate negligent supervision

4

claim in her appellate briefing.[1]  We therefore consider the claim abandoned and do not discuss it further.  (See, e.g., *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177; *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 524, fn. 5.)

As the basis of her claims for breach of contract and breach of the implied covenant of good faith and fair dealing, Cunningham alleged that Rady terminated her employment without "good, just and sufficient cause."  The basis for her claim for intentional infliction of emotional distress was Jensen's allegedly extreme and outrageous conduct in disciplining and ultimately firing her.

Rady moved for summary judgment, or alternatively summary adjudication, on Cunningham's claims.  Rady argued the claims for breach of contract and breach of the implied covenant of good faith and fair dealing failed as a matter of law because Cunningham's employment was expressly made at will and was therefore subject to termination at any time, with or without cause.  Rady further argued that Cunningham's claim for intentional infliction of emotional distress failed as a matter of law because workers' compensation provided the exclusive remedy for her alleged injury and because

---

[1]     The only mention of "negligent supervision" occurs in Cunningham's reply brief on appeal, as part of an argument that Rady did not have good cause to fire her. Specifically, Cunningham contends that Rady's negligent supervision caused her to receive improper training from Johnson regarding Rady's employment policies.  This passing reference to negligent supervision as part of an argument concerning other claims in a reply brief does not suffice to preserve the disposition of the negligent supervision claim for appellate review.  (See, e.g., *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 726 [failure to make argument in appellate brief under appropriate heading forfeits argument]; *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [points raised for first time in reply brief ordinarily will not be considered].)

there was no evidence Rady had engaged in any extreme and outrageous conduct toward her.

Cunningham opposed the summary judgment motion. She argued that Rady's conduct after initially hiring her, including giving her a "stellar" 90-day performance review, making her a full-time employee, and progressively disciplining her, created an implied contract not to terminate her without good cause. According to Cunningham, Rady breached both the implied contract and the implied covenant of good faith and fair dealing by firing her for pretextual reasons and without sufficient justification. She also argued workers' compensation was not the exclusive remedy for her alleged emotional distress because Jensen's placement of "onerous restrictions" on her job performance constituted extreme and outrageous conduct that exceeded the normal risks of the employment relationship.

In reply, Rady argued there was no evidence to establish an implied contract not to fire Cunningham without good cause. Rady also contended the personnel management decisions of which Cunningham complained were insufficient to support a claim for intentional infliction of emotional distress.

The trial court granted Rady's motion for summary judgment. The court ruled that Cunningham's claims for breach of contract and breach of the implied covenant of good faith and fair dealing failed because she had no evidence to establish the existence of an implied agreement by Rady not to fire her except for good cause. The court also ruled that Cunningham's claim for intentional infliction of emotional distress failed because the exclusive remedy for the alleged injury was workers' compensation and because Jensen

6

did not engage in any extreme and outrageous conduct toward her. Based on these rulings, the court entered judgment against Cunningham and in favor of Rady.

DISCUSSION

Cunningham contends the trial court erred in granting Rady's motion for summary judgment because there are triable issues of material fact regarding her claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. We shall set forth the applicable standard of review and then address each of Cunningham's claims.

A.    *Standard of Review*

A defendant may move for summary judgment on the ground "the action has no merit," i.e., as to each cause of action at issue, the plaintiff cannot establish an essential element or the defendant has a complete defense. (Code Civ. Proc., § 437c, subds. (a), (*o*).) To prevail on a motion for summary judgment, the defendant must show there are no triable issues of material fact, and under the applicable law the plaintiff cannot prevail on any asserted cause of action. (*Id.*, § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) On appeal from a summary judgment in favor of the defendant, we review de novo the record that was before the trial court when it ruled on the motion, resolving any doubts in the evidence in favor of the plaintiff. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96-97; *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1523.)

7

B.      *Breach of Contract*

We first consider Cunningham's claim that Rady breached an implied contract not to fire her except for good cause. Where, as here, an employment has no specified term, it "may be terminated at the will of either party on notice to the other." (Lab. Code, § 2922.) "An at-will employment may be ended by either party 'at any time without cause,' for any or no reason, and subject to no procedure except the statutory requirement of notice." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335 (*Guz*).) "Thus, in the absence of any evidence of the duration or term of employment under a written or oral agreement, there is a statutory presumption that employment is terminable at will, and a contract of employment may be ended at any time at the option of either party." (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1386 (*Eisenberg*).) As we shall explain, Cunningham did not introduce evidence sufficient to rebut the presumption her employment was at will.

In its motion for summary judgment, Rady argued Cunningham's breach of contract claim had no merit because her employment was terminable at will. An employer may rely on the presumption of at-will employment in moving for summary judgment on a claim by an employee that the employer breached an implied contract not to terminate except for good cause. (*Kovatch v. California Casualty Management Co.* (1998) 65 Cal.App.4th 1256, 1276 (*Kovatch*); *Davis v. Consolidated Freightways* (1994) 29 Cal.App.4th 354, 369 (*Davis*).) In support of its motion, Rady submitted a copy of Cunningham's signed employment application and a portion of the employee handbook, which she acknowledged in writing that she had received; both of these documents

8

clearly stated Cunningham was an at-will employee who could be discharged at any time without cause. Because a "contract requiring termination only for cause will not be implied if there is an express writing providing to the contrary" (*Eisenberg*, *supra*, 74 Cal.App.4th at p. 1387), Rady met its initial summary judgment burden to show that Cunningham's breach of implied contract claim had no merit. (See Code Civ. Proc., § 437c, subd. (p)(2); *Kovatch*, at p. 1276 [employer satisfied burden to prove employee was at will by relying on Lab. Code, § 2922 presumption, employment application, and employee handbook].)

It is true, as Cunningham points out, that neither the employment application nor the employee handbook was an integrated contract. Nevertheless, our Supreme Court has held that when an "employer has chosen to maintain such written policies, the terms they describe must be a central focus of the contractual analysis." (*Guz*, *supra*, 24 Cal.4th at p. 345.) Accordingly, the fact that the application and handbook were not contracts "does not render these written documents stating [Rady's] policy of at-will employment, and [Cunningham's] signatures acknowledging that policy, any less significant to this case. To the contrary, these signed documents provide strong evidence in support of the statutory *presumption* that [Cunningham's] employment, which admittedly had no specified term, was terminable at will. The fact the application for employment and the employee handbook did not *themselves* constitute an integrated employment contract does not undermine their materiality as evidence of the nature of [Cunningham's] employment, *in the absence of countervailing factual evidence of an implied-in-fact contract not to discharge in the absence of good cause*." (*Eisenberg*, *supra*, 74

9

Cal.App.4th at p. 1388, some italics added; see also *Kovatch*, *supra*, 65 Cal.App.4th at p. 1276 [even if employment application is not binding contract, "the at-will language in the application still constitutes 'evidence concerning the ultimate agreement entered into between the parties'"].) Given Rady's evidentiary showing that Cunningham was an at-will employee, we must now determine whether she raised a triable issue of material fact by producing competent evidence of an implied agreement by Rady that it would not fire her without good cause. (See Code Civ. Proc., § 437c, subd. (p)(2); *Eisenberg*, at p. 1387.)

Our Supreme Court has "identified several factors, apart from the express terms, that may bear upon 'the existence *and content* of an . . . [implied-in-fact] agreement' placing limits on the employer's right to discharge an employee." (*Guz*, *supra*, 24 Cal.4th at p. 336.) These factors include: (1) the employer's personnel policies and practices; (2) the longevity of the employee's service; (3) actions or communications by the employer indicating assurances of continued employment; and (4) practices within the industry in which the employee is engaged. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 680; accord, *Guz*, at pp. 336-337.) Attempting to establish such factors in support of the existence of an implied contract not to terminate employment without cause, Cunningham cites the following: (1) Rady gave her a "stellar" 90-day performance review; (2) Rady changed her employment status from per diem to full time but did not discuss her at-will status during the transition; (3) Cunningham had an "understanding" she could not be terminated without cause once she became a full-time employee; and (4) Rady had a progressive discipline policy. These facts, however, are

10

insufficient to establish the existence of an implied agreement by Rady not to discharge Cunningham without good cause.

First, even if we assume Cunningham's 90-day performance review was "stellar," that would not allow her to defeat summary judgment. Favorable performance reviews, even when accompanied by long duration of service, praise from supervisors, and salary increases, "do not, without more, imply an employer's contractual intent to relinquish its at-will rights." (*Guz*, *supra*, 24 Cal.4th at p. 341; accord, *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 819; *Kovatch*, *supra*, 65 Cal.App.4th at p. 1276.) Cunningham's single positive performance review in the course of an employment that lasted less than seven months does not support the existence of an implied contract not to terminate her employment without cause.

Second, Rady's decision to change Cunningham's employment status from per diem to full time does not imply an agreement not to terminate her employment without cause. An employee's at-will status is not altered by the fact that she switches from a temporary to a permanent position. (*Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 630 (*Camp*).) Further, the alleged absence of any discussion of at-will status during the transition from per diem to full-time employment is of no legal consequence. Cunningham acknowledged her employment was at will when she signed the employment application and initialed the paragraph stating that Rady "may terminate the employment relationship at any time, with or without cause." It is well established that a party who signs a document is presumed to have read it and to know its contents. (E.g., *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1588-1589; *Randas*

11

*v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163; *Estate of Johanson* (1943) 62 Cal.App.2d 41, 54.)

Third, Cunningham's "understanding" that Rady could not discharge her except for good cause once she became a full-time employee does not establish an implied agreement to that effect. One party's *unilateral* understanding cannot create a contract binding the other party because a contract requires *both parties*' consent (Civ. Code, §§ 1550, 1565; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811; *Barragan v. Workers' Comp. Appeals Bd.* (1987) 195 Cal.App.3d 637, 644), in the form of "express mutual words" or "conduct evidencing a similar meeting of minds" (*Guz, supra*, 24 Cal.4th at p. 337). Here, the application form Cunningham signed and the employee handbook she acknowledged receiving both contained clear statements that employment was at will and could not be changed to other than at will except by a written contract signed by Rady. These "express mutual words" negate any claim that the parties "*reasonably* understood" that they had "create[d] binding limits on [Rady's] statutory right to terminate the relationship at will." (*Id.* at pp. 337, 340, italics added.) Moreover, the only evidence Cunningham cites in support of her claimed understanding that she would not be discharged without good cause is the following testimony from her deposition: "Somehow I have it in my head[,] and I don't know exactly where it came [from,] that after my initial probation I would not be terminated without just cause." Such "conclusory assertions fail to provide the factual *evidence* necessary to overcome the presumption of at-will employment," and therefore "are insufficient as a matter of law

12

either to controvert that presumption, or to support a cause of action for breach of implied-in-fact contract." (*Eisenberg*, *supra*, 74 Cal.App.4th at p. 1390.)

Fourth and finally, an employer's progressive discipline policy does not amount to a promise not to fire an employee without good cause. Even if an employer imposes discipline other than immediate discharge to encourage compliance with its employment policies and practices, "that proves nothing regarding the existence or nonexistence of [an] at-will employment policy. Otherwise, an employer would be forced purposely to terminate employees for any and every infraction—or none at all—in order to maintain the presumption of at-will employment. The law does not require such caprice to avoid creating an implied in fact contract." (*Davis*, *supra*, 29 Cal.App.4th at p. 367.)

In sum, Cunningham failed to raise a triable issue of material fact as to whether the at-will nature of her employment by Rady was "modified" to require good cause for termination. The trial court therefore correctly ruled her breach of contract claim had no merit, and Rady was entitled to judgment as a matter of law on that claim. (See Code Civ. Proc., § 437c, subds. (c), (p)(2); *Eisenberg*, *supra*, 74 Cal.App.4th at p. 1390; *Kovatch*, *supra*, 65 Cal.App.4th at p. 1277.)

C.      *Breach of Implied Covenant of Good Faith and Fair Dealing*

We next consider Cunningham's claim that Rady breached the implied covenant of good faith and fair dealing by firing her without cause. This claim necessarily fails with Cunningham's claim for breach of contract, because "the implied covenant of good faith and fair dealing cannot supply limitations on termination rights to which the parties have not actually agreed." (*Guz*, *supra*, 24 Cal.4th at p. 342.) In other words, "[a]n at-will

13

employee cannot use the implied covenant to create a for cause employment contract where none exists." (*Eisenberg*, *supra*, 74 Cal.App.4th at p. 1391.) Having correctly ruled that Cunningham and Rady had no implied contract not to discharge her without good cause, the trial court also correctly ruled her claim for breach of the implied covenant of good faith and fair dealing failed as a matter of law. (*Ibid.*; *Horn v. Cushman & Wakefield Western, Inc.*, *supra*, 72 Cal.App.4th at pp. 819-820; *Camp*, *supra*, 35 Cal.App.4th at p. 631.)

D.    *Intentional Infliction of Emotional Distress*

We finally consider Cunningham's claim that in discharging her, Rady intentionally caused her to suffer severe emotional distress. Injuries resulting from termination of employment ordinarily arise out of and occur in the course of the employment and therefore are subject to the exclusive remedy provisions of the workers' compensation scheme. (Lab. Code, § 3600, subd. (a); *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 19-20 (*Shoemaker*); *Horn v. Bradco Internat., Ltd.* (1991) 232 Cal.App.3d 653, 665.) Cunningham contends, however, that workers' compensation is not her exclusive remedy because "[t]he ordeal [she] suffered at the hands of Jensen during the last two months of her employment could scarcely be characterized as being within the bounds of the normal risks of an employment relationship." We are not persuaded.

The conduct Cunningham alleges against Rady does not take her emotional distress claim outside the workers' compensation scheme. Cunningham complains Jensen insisted she start work promptly at 8:00 a.m., finish promptly at 5:00 p.m., and remain at her desk to answer telephone calls at all times in between, even though none of her

14

coworkers was subject to these "strict conditions," and she had other responsibilities that required her to be away from her desk. Cunningham also asserts the written warnings she received were "unfounded"; she was "put off" whenever she tried to discuss her concerns with Jensen or his supervisor; and she "had no opportunity to explain or defend [her]self" when she was fired. Our Supreme Court has held, however, that "criticism of work practices," "frictions in negotiations as to grievances," "clash of personality or values," and "discipline" are each a normal part of the employment relationship. (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160, 161; see *Shoemaker*, *supra*, 52 Cal.3d at p. 25.) Further, "an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Cole*, at p. 160.) Accordingly, because the wrongful conduct alleged against Rady occurred at the worksite in the normal course of the employment relationship, workers' compensation is the exclusive remedy for any emotional distress Cunningham may have suffered, and the trial court properly granted Rady's motion for summary judgment. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902; *Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1406; *Mueller v. County of Los Angeles* (2009) 176 Cal.App.4th 809, 823-824.)

15

DISPOSITION

The judgment is affirmed.

_____

IRION, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

AARON, J.