Filed 12/26/23

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| LISA ROBINSON et al., | C097301 |
| Plaintiffs and Appellants, | (Super. Ct. No. STK-PR-TR-2020-0000916) |
| v. | |
| ELVIRA GUTIERREZ, Individually and as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Carter P. Holly, Judge.  Reversed.

Law Office of Kristi Barnard and Kristi Barnard for Plaintiffs and Appellants.

Kroloff, Belcher, Smart, Perry & Christopherson, Rebecca H. Sem and Kelsea A. Carbajal for Defendant and Respondent.

1

A provision of a dependent adult's testamentary instrument that makes a donative transfer to the adult's "care custodian" is presumed to be the product of fraud or undue influence if the adult executed the instrument during the period when the care custodian provided services to the adult or within 90 days before or after that period. (Prob. Code, § 21380, subd. (a)(3) [subsequent undesignated references to statutes are to the Probate Code].) A "care custodian" is a person who provides health or social services to a dependent adult. (§ 21362, subd. (a).)

For purposes of section 21380's presumption, however, a "care custodian" does not include a person "who provided services without remuneration if the person had a personal relationship with the dependent adult" as established by criteria in the statute. (§ 21362, subd. (a).)

In this matter brought by a decedent's intestate heirs at law, the trial court determined that defendant Elvira Gutierrez was not a care custodian for purposes of section 21380's presumption. Gutierrez was residing with the decedent receiving free room and board in exchange for providing care services when the decedent executed instruments transferring her entire estate to Gutierrez. The trial court ruled that Gutierrez was not a care custodian because room and board did not constitute remuneration for her services and she had a prior personal relationship with the decedent that met the other criteria set forth in section 21362, subdivision (a).

Plaintiffs contend on appeal that the trial court erred by determining Gutierrez was not a care custodian. They argue that Gutierrez's receipt of free room and board in exchange for her services for decedent constituted remuneration. They also assert that the record does not support the court's finding that Gutierrez and the decedent had a prior personal relationship.

We reverse. Free room and board in exchange for care services are remuneration for purposes of section 21362.

## FACTS AND PROCEDURAL HISTORY

In 2015, the decedent, Gwyneth A. Robinson, expressed to an acquaintance her desire to have a housemate to assist her on an as-needed basis. The acquaintance arranged for the decedent to meet the acquaintance's sister, defendant Gutierrez. As a result of this meeting, Gutierrez moved into the decedent's residence in 2015 and received free room and board in exchange for performing household duties of cleaning and laundry, and driving the decedent as needed. When Gutierrez moved in, the decedent was able to maintain her personal needs, pay her bills and expenses, purchase her own food, prepare her meals, and administer her medications. Gutierrez provided companionship, which the decedent needed. This relationship lasted for nearly three years. There was no evidence Gutierrez received remuneration for her services other than free room and board.

In September 2018, the decedent executed a joint tenancy deed naming Gutierrez as a joint tenant on the title to her residence. In October 2018 and while a patient in a hospital, the decedent directed an attorney to prepare her estate plan. She wanted her entire estate to go to Gutierrez and to have Gutierrez be the trustee of her trust.

The attorney prepared a trust instrument, a will, and an individual grant deed. In the revokable inter vivos trust agreement, the decedent named Gutierrez as the trustee of the trust, and she transferred her property into the trust. Decedent transferred her residence by grant deed to Gutierrez as trustee of the trust. The trust and the will declared that upon the decedent's death, all of decedent's property passed to Gutierrez free of trust.

The decedent executed the estate instruments at her home on October 18, 2018. She died 10 days later.

Plaintiffs are the surviving children of the decedent's brother, who predeceased her.[1] They brought this action in 2020 by petition in the probate court to determine the validity of the trust and the will. In their first amended petition, they also alleged causes of action for elder financial abuse and undue influence. They sought a constructive trust and other forms of relief.

Following a three-day court trial, the trial court denied plaintiffs' petition and entered judgment in favor of Gutierrez. The court stated that based on the evidence presented, Gutierrez was a "care custodian" unless the evidence showed that the exception under section 21362 applied: that she had a preexisting personal relationship with the decedent, who was a dependent adult, and she provided services to the decedent without remuneration. The court found the exception applied. The court ruled that Gutierrez's receipt of free room and board did not constitute remuneration for purposes of section 21362 because room and board did not constitute taxable income. The court also found that the decedent and Gutierrez had the requisite personal relationship before Gutierrez began providing services. As a result of these findings, the instruments' donative transfers were not presumed under section 21380 to be the result of fraud or undue influence.

The court also found there was insufficient evidence that Gutierrez exercised undue influence over the decedent's execution of the instruments or that the donative transfers were the result of undue influence or fraud. There also was no financial elder abuse.

Plaintiffs on appeal challenge the court's findings that Gutierrez did not receive remuneration for her services and that Gutierrez and the decedent had a prior personal relationship.

---

[1] Plaintiffs are Lisa Robinson, Renee Robinson, Russell Robinson, Richard Robinson, and Ashley Robinson.

4

DISCUSSION

I

*Evidentiary Arguments*

Plaintiffs did not submit a reporter's transcript of the trial as part of the record. As a result, and because no factual error is apparent on the face of the record, plaintiffs are barred from challenging the sufficiency of the evidence. We conclusively presume the evidence supports the judgment. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) This includes our conclusively presuming that sufficient facts support the trial court's determination that Gutierrez and the decedent had the prior personal relationship required by section 21362 for Gutierrez not to be a "care custodian" for purposes of section 21380.

Also, the briefs filed by both sides do not comply with the Rules of Court. The Rules require briefs to support any reference to a matter in the record with a citation to a place in the record where the matter appears. (Cal. Rules of Court, rule 8.204(a)(1)(c).) Each of the briefs filed in this appeal omit citations to the record in support of factual assertions and arguments. We deem arguments not supported by citations to the record to have been waived. (*Brown v. El Dorado Union High School Dist.* (2022) 76 Cal.App.5th 1003, 1021.)

II

*Meaning of "Remuneration" in Section 21362*

The trial court determined that the free room and board Gutierrez received for her services did not constitute "remuneration" as that term is used in section 21362. The court stated: "No evidence was presented at trial that [Gutierrez] received remuneration for the services [she] provided to the Decedent other than the receipt of free rent and board. This is not remuneration as used in Probate Code § 21362. Petitioners in their Post-Trial Brief have cited various court opinions arising out of an employer-employee

5

relationship to argue that free rent and board is a form of compensation and hence is remuneration. The logic of these cases cannot be applied to the relationship between the Decedent and [Gutierrez]. If free rent and board is remuneration, then any parent who allows an adult child to return to live at the parent's residence would have imputed rental income from the adult child or the child would have to pay income taxes on the value of the room and board received. It is appropriate to look at how the Internal Revenue would characterize the relationship between the Decedent and [Gutierrez]. There was no dollar value placed on the room and board that [Gutierrez] received, and hence there was no taxable income received by [Gutierrez] such that free room and board is not remuneration." The trial court did not cite any federal tax statutes, regulations, or cases to support its reasoning.

Plaintiffs contend the trial court erred. They argue that the free room and board Gutierrez received in exchange for her services qualified as remuneration for purposes of section 21362. They and Gutierrez acknowledge that no statute or reported opinion has defined "remuneration" as it is used in section 21362. But plaintiffs argue that the trial court's analogizing the decedent and Gutierrez's relationship to a parent/child relationship is misplaced and defeats the statute's purpose of protecting vulnerable dependent adults from exploitation while at the same time allowing them to make donative transfers to long-time friends who assist them for no compensation. Plaintiffs rely on employment compensation and workers' compensation cases, discussed below, where the Courts of Appeal determined that forms of noncash benefits in exchange for services qualified as compensation or remuneration to argue that "remuneration" as used in section 21362 encompasses noncash forms of compensation. In exchange for her services, Gutierrez could have received money and then rented a room and paid for food on her own, but she and the decedent made a different arrangement for remuneration.

The meaning of the word "remuneration" as it is used in section 21362 is a question of law which we review de novo. (*Weatherford v. City of San Rafael* (2017)

6

2 Cal.5th 1241, 1247.) "Our role in interpreting statutes is to ascertain and effectuate the intended legislative purpose. (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849 []; *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 [].) We begin with the text, construing words in their broader statutory context and, where possible, harmonizing provisions concerning the same subject. (*926 North Ardmore Ave., LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328 []; *Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 155-156 []; *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198 [].) If this contextual reading of the statute's language reveals no ambiguity, we need not refer to extrinsic sources. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 713 []; *Gomez v. Superior Court* (2012) 54 Cal.4th 293, 300 [].)" (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089-1090.) If the statutory language permits more than one reasonable interpretation, we may consider extrinsic sources, such as the statute's purpose, legislative history, and public policy. (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

We begin with the word itself. "Remuneration" has been defined as "[p]ayment; compensation, esp[ecially] for a service that someone has performed." (Black's Law Dict. (11th ed. 2019) p. 1550.) Remuneration is a "[r]eward, recompense; (now usually) money paid for work or a service; payment, pay." (Oxford English Dist. (2023), remuneration (https://perma.cc/7K48-497V accessed Nov. 22, 2023).) "Remuneration" is "something that remunerates: recompense, pay." (Merriam-Webster Unabridged Dict. (2023), remuneration (https://perma.cc/2YWS-C9DB accessed Nov. 22, 2023).) To "remunerate" means "to pay an equivalent for (as a service, loss, expense)" or "to pay an equivalent to (a person) for a service, loss, or expense." (Merriam-Webster Unabridged Dict. (2023), remunerate (https://perma.cc/2WA8-G4DS accessed Nov. 22, 2023).)

In turn, "payment" can mean the "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation," or "[t]he money or other valuable thing so delivered in satisfaction of an

7

obligation." (Black's Law Dict. (11th ed. 2019) p. 1363.) "Pay" as a noun refers to "[c]ompensation for services performed; salary, wages, stipend, or other remuneration given for work done." (Black's Law Dict. (11th ed. 2019) p. 1362.) And "compensation" means "[r]emuneration and other benefits received in return for services rendered; esp[ecially] salary or wages." (Black's Law Dict. (11th ed. 2019) p. 354.)

These definitions show that the terms "remuneration," "pay," and "compensation" can be interchangeable. As used in section 21362, "remuneration" refers to a form of compensation given in exchange for the provision of care services. The dictionary sources indicate that "remuneration" refers to compensation in the form of money or some other thing of equivalent value. Thus, on its face, the term includes compensation in the form of room and board or other noncash benefits in exchange for the provision of care services.

Turning to the word's broader statutory context, we see that the Legislature expressly excluded certain payments from being considered to be remuneration for purposes of section 21362. The statute states that as used in the definition of a care custodian, " 'remuneration' does not include the donative transfer at issue under this chapter or the reimbursement of expenses." (§ 21362, subd. (a).) "It is a settled rule of statutory construction that 'where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed.' " (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 970.) Had the Legislature intended to exclude room and board from being considered as remuneration for purposes of section 21362, it would likely have listed them in the quoted sentence as additional types of payment or compensation that do not constitute remuneration. Its silence implies it did not intend to exclude room and board as remuneration for purposes of determining whether a person is being remunerated or compensated for rendering care services.

But because "remuneration" as used in section 21362 can reasonably be read to encompass money, other types of benefits, or both, we turn to the statute's legislative

8

history and purposes to discern legislative intent. This review further convinces us that the Legislature in this instance intended that remuneration would include room and board given in exchange for care and social services.

Responding to reports that an attorney who drafted numerous wills and trusts for seniors had named himself as a major or exclusive beneficiary, the Legislature in 1993 adopted statutes to prevent such abuse. (*Bernard v. Foley* (2006) 39 Cal.4th 794, 809.) Former section 21350 presumptively invalidated testamentary donative transfers to the instrument's drafter, fiduciaries of the transferor, and persons close to them. (*Id*. at p. 810; former § 21350, subd. (a)(1)-(5).) A transferee other than the instrument's drafter could rebut former section 21350's presumption of disqualification by showing upon clear and convincing evidence that the transfer was not a product of fraud, menace, duress, or undue influence. (Former § 21351, subd. (d); *Rice v. Clark* (2002) 28 Cal.4th 89, 97-98.) The purpose of section 21350 was " 'to prevent unscrupulous persons in fiduciary relationships from obtaining gifts from elderly persons through undue influence or other overbearing behavior.' " (*Bernard*, at p. 809.)

In 1997, the Legislature broadened the presumption's scope. It amended former section 21350 to presumptively disqualify donative transfers by dependent adults to their care custodians. (Former § 21350, subd. (a)(6); *Bernard, supra*, 39 Cal.4th at p. 810.) A "care custodian" was defined to include any person providing health or social services to elders or dependent adults. (Former § 21350, subd. (c); Welf. & Inst. Code, § 15610.17, subd. (y); *Bernard*, at pp. 799-800 & fn. 4.) The amendment attempted to address the problem that care custodians often worked alone and in positions from which they could take advantage of the person they were caring for. (*Bernard,* at p. 810.)

In *Bernard*, the California Supreme Court held that the definition of "care custodian" was not limited to persons who provided services to dependent adults on an occupational or professional basis. The definition included a dependent adult's preexisting personal friends who provided services without compensation. (*Bernard,*

9

*supra*, 39 Cal.4th at pp. 810-812, 816 (conc. opn. of George, C.J.).) Neither the statutory language nor the legislative history supported a preexisting personal friendship exception to former section 21350's presumptive ban of transfers to care custodians. (*Id*. at p. 813.) The Legislature was aware that personal friendship was no guarantee against the exercise of fraud or undue influence over dependent adults. (*Id*. at p. 811.) Individuals acting as "unpaid care custodians" who were not related to the dependent adult they cared for could potentially exercise undue influence over the adult as readily as professional or occupational care custodians. (*Id*. at p. 816 (conc. opn. of George, C.J.), fn. omitted.)

In his concurrence, however, the Chief Justice asked the Legislature to consider excluding a dependent adult's preexisting personal friends from the transfer ban who, motivated by long-term friendship, moral obligation, or other personal incentive, provide substantial, ongoing health care services to the dependent adult without compensation for an extended period. (*Bernard, supra*, 39 Cal.4th at p. 819 (conc. opn. of George, C.J.).) The Chief Justice stated, "In my view, it is questionable whether the uncompensated individual who in a nonoccupational capacity provides substantial, ongoing health services to a dependent adult for an extended period and eventually is made his or her beneficiary, should be subject to the identical presumptive disqualification and burden of proof imposed upon an individual who assumes the role of an unpaid caregiver for a relatively brief period preceding the dependent adult's favorable modification of a testamentary disposition, at a time that is fairly proximate to death.

"As a practical matter, the justification for presuming an exercise of undue influence is less compelling when an individual having a preexisting personal relationship with the dependent adult renders health care and other services over a relatively lengthy period of time. First, the likelihood is less that a personal friend gratuitously providing substantial, ongoing health care services over a lengthy term is motivated by the prospect of obtaining undue economic benefit by coercing a testamentary modification. Second, an uncompensated but well-established caregiving

10

relationship affords greater opportunity to the donor's relatives and other interested parties to observe the course of the relationship and to resolve any concerns occasioned by the caregiver's position of trust and potential ability to exert undue influence.

"As a matter of policy, it is of doubtful social efficacy to apply the statutory presumption and evidentiary burden to an individual who in a nonprofessional capacity undertakes the serious responsibilities attending the long-term care of a dependent adult. To do so is counterintuitive to our sense that the uncompensated efforts of such an individual, benefiting the dependent adult in question and society in general, should be recognized and encouraged.

"[A]pplying the statute to those persons who have undertaken the long-term care of a dependent adult without compensation does not appear to take full measure of the importance to the individual or the benefits to society of such efforts born of preexisting personal relationships.

"Accordingly, I would suggest legislative modification of the relevant statutes to exempt or otherwise limit application of the statutory presumption of undue influence in the case of uncompensated care custodians who provide long-term health care and other services for dependent adults." (*Bernard, supra*, 39 Cal.4th at pp. 819-820.)

The Legislature directed the California Law Revision Commission to study the operation and effectiveness of the donative transfer statutes. (Stats. 2006, ch. 215 (Assem. Bill No. 2034), § 1.) The study was to address, among other matters, whether the definition of "care custodian" should include "long time family friends, nonprofessional caregivers who have a preexisting relationship with the transferor, or other 'good Samaritans.' " (*Id*. at § 1, subd. (b)(3).)

The Law Revision Commission released its recommendation in 2008. (38 Cal. Law Revision Com. Rep. (2008) p. 107.) It recommended limiting the definition of "care custodian" to "a person who provides health or social services for remuneration, as a profession or occupation (thereby excluding personal friends and other volunteers)." (*Id*.

11

at p. 110.) Although both occupational and nonoccupational care givers had opportunity to exert undue influence over a dependent and often vulnerable adult, a gift to a friend or Good Samaritan may appear more natural, such as a gift to a family member, and not "unnatural," such as a large gift to a paid employee. An unnatural gift is a recognized indicia of undue influence. (*Id*. at p. 124.) The Commission thus recommended "that volunteer caregivers be excluded from the definition of 'care custodian.' A gift to a volunteer caregiver could still be challenged under the common law on fraud and undue influence, but would not be presumed to be the product of fraud and undue influence." (*Id*. at pp. 125-126.)

The Legislature responded to the Law Revision Commission's report by adopting Senate Bill No. 105 in 2010. As originally drafted, the bill mirrored the Law Revision Commission's recommendations. It defined a care custodian as "a person who provides health or social services to a dependent adult for remuneration, as a profession or occupation." (Sen. Bill No. 105 (2009-2010 Reg. Sess.), as introduced January 27, 2009.) The Senate Judiciary Committee report explained that a "care custodian" under the proposed legislation would be limited to "someone who is paid to provide health and social services . . . to a dependent adult for remuneration[.]" (Sen. Judiciary Com., Rep. on Sen. Bill No. 105 (2009-2010 Reg. Sess.) May 5, 2009, p. 7.)

The legislation also proposed that a dependent adult's donative transfer to a care custodian was presumed to be the product of fraud or undue influence if the instrument was executed during the period when the care custodian provided services to the transferor. (Sen. Bill No. 105 (2009-2010 Reg. Sess.), as introduced January 27, 2009, adding section § 21380, subd. (a)(3).)

The Assembly Committee on Judiciary amended Senate Bill No. 105. It narrowed the definition of "dependent adult" and broadened the definition of "care custodian" to better balance the need to protect vulnerable and dependent adults from financial abuse and the ability of legally competent adults to make testamentary gifts freely. (Assem.

12

Com. on Judiciary, Rep. on Sen. Bill No. 105 (2009-2010 Reg. Sess.) June 29, 2010, p. 6.) Of relevance here, the amendment expanded the definition of a care custodian by removing the proposed requirement that a care custodian be a person who provides services as a profession or occupation. The amendment also set forth elements that would help establish whether the dependent adult and the care custodian had a prior personal relationship. These amendments were ultimately adopted by the Legislature in the enacted statute. (Stats. 2010, ch. 620 (Sen. Bill No. 105), § 7.)

A "care custodian" is defined in the statute as "a person who provides health or social services to a dependent adult, except that 'care custodian' does not include a person who provided services without remuneration if the person had a personal relationship with the dependent adult (1) at least 90 days before providing those services, (2) at least six months before the dependent adult's death, and (3) before the dependant adult was admitted to hospice care, if the dependent adult was admitted to hospice care. As used in this subdivision, 'remuneration' does not include the donative transfer at issue under this chapter or the reimbursement of expenses." (§ 21362, subd. (a); Sen. Bill No. 105 (2009-2010 Reg. Sess.) as amended June 22, 2010.) A dependent adult's donative transfer to a care custodian is presumed to be the product of fraud or undue influence "if the instrument was executed during the period in which the care custodian provided services to the transferor, or within 90 days before or after that period." (§ 21380, subd. (a)(3).)

The Assembly Committee on Judiciary explained it amended the definition of care custodian to exclude donative transfers by dependent adults to their friends from the presumption of undue influence. The Committee report states: "This bill seeks to exclude friends from the definition of care custodian, but still protect vulnerable adults from those who might prey upon them. The existing definition of care custodian includes unpaid friends who provide services as part of a true friendship with the dependent adult, such as a long-term friend and neighbor who may start bringing in meals to help his or

13

her friend. Under this bill, the definition of 'care custodian' is revised to exclude those who provide services without pay as long as the caregiver has a personal relationship with the dependent adult that [meets the time requirements set out in the amended statute]. These exemptions from the unpaid friend exception to the donative transfer presumption are designed to weed out unscrupulous individuals who pretend to befriend vulnerable dependent adults in order to, effectively, steal from them." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 105, *supra*, p. 6.) The unpaid friend exception and Senate Bill No. 105's presumption against donative transfers to care custodians were designed to protect vulnerable adults from financial abuse by unethical caregivers, while still giving them the freedom to make donative transfers as they see fit. (*Ibid*.)

This history indicates that the Legislature's primary concern was to protect dependent adults from unethical caregivers as much as reasonably possible. It concluded that a dependent adult's personal friends who rendered care for a substantial time without compensation would be least likely to take advantage of the adult. The Legislature decided that an objective way for determining whether a caregiver was such a friend was if he or she rendered services voluntarily without expectation or agreement of any remuneration. Interpreting "remuneration" to mean any form of compensation or pay best furthers the Legislature's intent to declare that all donative transfers by dependent adults to care providers are presumptively the result of fraud or undue influence except those transfers made to true, personal friends, as best as such friends can be objectively determined. The Legislature implicitly agreed with Chief Justice George that "the likelihood is less that a personal friend gratuitously providing substantial, ongoing health care services over a lengthy term is motivated by the prospect of obtaining undue economic benefit by coercing a testamentary modification." (*Bernard, supra*, 39 Cal.4th at p. 819 (conc. opn. of George, C.J.).)

This interpretation of "remuneration" is consistent with interpretations of the term in other employment-related cases. In cases cited by plaintiffs, courts have defined

14

"compensation" and "remuneration" in employment and workers' compensation contexts as including noncash benefits in exchange for services. In *Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630, the Court of Appeal held that a county's providing judges with employment benefits in addition to the compensation prescribed by the Legislature violated the state constitution's requirement that the Legislature prescribe "compensation" for judges. (*Id*. at p. 635; see Cal. Const., art. VI, § 19.) As used in the constitution, the term "compensation" was broad. It was payment for value received or service rendered and could be defined as "remuneration." (*Sturgeon*, at p. 645.) "[I]n its common understanding the term 'compensation' is not restricted to any particular method or mode of payment: '[T]he ordinary meaning of the term "compensation," as applied to officers, is remuneration in whatever form it may be given, whether it be salaries and fees, or both combined.' (*State v. Bland* (1913) 91 Kan. 160, 167 [].)" (*Sturgeon*, at p. 645, italics omitted.) Given the term's breadth, any common understanding of it included the type of employment benefits the county provided. (*Id*. at p. 646.)

In *Barragan v. Workers' Comp. Appeals Bd.* (1987) 195 Cal.App.3d 637 (*Barragan*), the Court of Appeal held that a student who was injured while performing services at a hospital as part of an unpaid externship was an employee for purposes of workers' compensation and was entitled to benefits. Courts have long held that when determining whether the injured person is an employee for purposes of workers' compensation, the consideration or compensation for an employment contract need not be in the form of wages or money and may be nonmonetary. (*Id.* at p. 646.) In this case, the unpaid student was compensated in the form of training and instruction from the hospital staff to become a physical therapist. (*Id*. at p. 648.)

The *Barragan* court recognized that by statute, any person who performed voluntary service at a private, nonprofit organization who received "no remuneration for the services other than meals, transportation, lodging or reimbursement for incidental expenses" was not an employee and thus not entitled to workers' compensation coverage.

15

(*Barragan, supra*, 195 Cal.App.3d at pp. 648-649; see Lab. Code, former § 3352, subd. (i) [Stats. 1979, ch. 76, § 1]; now Lab. Code, § 3352(a)(9).) The Court of Appeal held that this provision did not exclude the student from coverage. The student did not gratuitously volunteer her services to the hospital out of the goodness of her heart. She did it in order to receive training necessary to get a degree. (*Barragan*, at p. 649.) The Legislature also did not intend to exclude instruction and training from the definition of remuneration in section 3352. The definition of remuneration is not limited to cash payment, although the court stated that is one possible interpretation. (*Id.* at p. 650.) Case law held that training and instruction were adequate compensation for an employment contract for purposes of workers' compensation. (*Ibid.*) And workers' compensation cases have used the words compensation and remuneration interchangeably; thus, the use of the word remuneration in the Labor Code statute did not mean the Legislature was speaking only of cash payment. (*Id.* at pp. 650-651.)

In *Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, the California Supreme Court held that a person injured while performing community service in lieu of paying a fine for a criminal conviction was an employee for purposes of workers' compensation, and her exclusive remedy was under the Workers' Compensation Act. (*Id*. at p. 1059.) The person was not performing voluntary service, and she received remuneration in the form of credit against the court-imposed fine. (*Id*. at pp. 1064-1065.) The court stated that if the person had received money with which to pay her fine, "she unquestionably would have received sufficient remuneration. The same result must obtain in this case, where [the person] simply received credit against the fine instead." (*Id*. at p. 1065, fn. 7.)

A panel of this court encountered the term "remuneration" in *Motheral v. Workers' Comp. Appeals Bd.* (2011) 199 Cal.App.4th 148. By statute, when determining an employee's average weekly earnings for calculating temporary total disability, the market value of room and board that an employee receives as part of his or her "remuneration" which can be estimated in money must in general be included as

16

earnings. (Lab. Code, § 4454.) " ' "Lodging is remuneration if an employee is provided with lodging in exchange for services and that lodging is an economic advantage to the applicant." ' " (*Motheral*, at p. 155, quoting *Burke v. Workers' Comp. Appeals Bd.* (2009) 74 Cal.Comp.Cases 359, 363 [2009 Cal.Wrk.Comp.LEXIS 55].) Applying those standards, we concluded that lodging an employee received as part of his employment as a camp ranger was remuneration and should have been considered in calculating the employee's disability payment. (*Ibid.*)

In similar fashion, the Labor Code defines "wages" for its purposes as "all amounts for labor performed by employees of every description[.]" (Lab. Code, § 200, subd. (a).) Courts have interpreted "wages" to include benefits to which an employee is entitled as part of his or her compensation, including room and board. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.)

These cases indicate that appellate courts and the Legislature, at least in the context of employment and workers' compensation, have interpreted the terms compensation and remuneration interchangeably, and that remuneration includes noncash benefits including room and board where it is economically quantifiable and given in exchange for services rendered. They also show that when the Legislature adopted Labor Code section 3352 as discussed in *Barragan*, the Legislature considered room and board to be types of remuneration. For purposes of that statute, they were insufficient forms of remuneration by themselves to qualify a volunteer at a private, nonprofit organization for workers' compensation benefits.

The term "remuneration" is also interpreted broadly in employment discrimination law. Title VII of the Civil Rights Act of 1964 protects "employees" and applicants for employment. (42 U.S.C. §§ 2000e-2(a)(1), (2); 2000e(f).) Compensation is an essential condition to establish an employer-employee relationship, but "remuneration" for that purpose is interpreted to be more than just cash compensation. " '[R]emuneration need not be a salary, but must consist of "substantial benefits not merely incidental to the

17

activity performed." ' " (*Juino v. Livingston Parish Fire Dist. No. 5* (5th Cir. 2013) 717 F3d 431, 439-440.)

The California Fair Employment and Housing Act (FEHA) similarly protects employees. (Gov. Code, § 12900 et seq.) An individual cannot be deemed an employee for purposes of FEHA "absent the existence of remuneration." (*Talley v. County of Fresno* (2020) 51 Cal.App.5th 1060, 1083.) To qualify as remuneration, the benefit need not be monetary, but it "must be of a quantifiable, financial nature that is significant and not merely incidental to the work activities performed." (*Id*. at p. 1084.) We found no cases determining whether room and board qualify as remuneration under FEHA, but the cases illustrate that remuneration and compensation can include more than just cash payments. Our interpreting "remuneration" in section 21362 to include room and board is not inconsistent with how the term has been interpreted in other employment contexts.

We are not persuaded by the trial court's reliance on federal tax law to define remuneration for purposes of section 21362 as taxable income. In general, "taxable income" means gross income or adjusted gross income *less* allowable deductions. (26 U.S.C. § 63(a), (b).) By definition, "taxable income" does not necessarily include all remuneration, or even all cash remuneration, an employee receives as compensation. Care providers could be compensated and, if they have enough in deductions, reduce their taxable income to zero. Narrowing the definition of remuneration to taxable income would thus thwart the Legislature's ability to protect dependent adults from unethical caregivers who are compensated for their services. It would also thwart the Legislature's intent to exclude from the presumption of undue influence only donative transfers made to close, personal friends who most likely would render care services voluntarily and without any compensation over a significant amount of time. There is no indication the Legislature intended remuneration as used in section 21362 to be limited to taxable income.

18

For all the above reasons, we hold that the Legislature intended the term "remuneration" as used in section 21362 to include free room and board. Because Gutierrez received remuneration in exchange for her care services, she qualifies as a care custodian, and the decedent's donative gift to her is subject to the presumption of fraud or undue influence under section 21380.

## III

### *Finding of No Undue Influence*

Gutierrez argues that even if she was a care custodian under section 21362, there was no evidence of undue influence. While the trial court concluded there was no undue influence, it made that determination based on the preponderance of the evidence. That standard of proof does not apply when the transfer was made to a care custodian and the presumption of fraud or undue influence arises.

Because the donative transfer is presumed to be the result of fraud or undue influence under section 21380, the presumption may be rebutted by Gutierrez proving "by clear and convincing evidence" that the transfer was not the product of fraud or undue influence. (§ 21380, subd. (b).) The trial court expressly did not apply that burden of proof or make that determination when it resolved plaintiffs' claims. It will be obligated to apply that burden of proof on remand.

DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.  Costs on appeal are awarded to plaintiffs.  (Cal. Rules of Court, rule 8.278(a).)


                                              _____

                                              HULL, J.


We concur:


_____

EARL, P. J.


_____

ROBIE, J.